Belknap
No. 2002-524

## THE STATE OF NEW HAMPSHIRE

### v.

### DANIEL MASON

Argued: July 9, 2003
Opinion Issued: September 29, 2003

*Peter W. Heed*, attorney general (*Susan P. McGinnis*, attorney, on the brief and orally), for the State.

*Dawnangela Minton*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

DALIANIS, J. The defendant, Daniel Mason, was convicted by a jury in Superior Court (*Smukler*, J.) of two counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996), one count of felonious sexual assault, *see* RSA 632-A:3 (1996), one count of second-degree assault, *see* RSA 631:2 (1996), and one count of witness tampering, *see* RSA 641:5 (1996). We reverse and remand.

The jury could have found the following facts. The defendant lived with the minor victim for a number of years in Laconia. He was the boyfriend of the victim's mother. Following an argument on the evening of March 15, 2000, the defendant hit the victim in the mouth. The next day at school, the victim informed a teacher that the defendant had hit her. A guidance counselor telephoned Laura Kinson, a child protection worker for the division for children, youth and families (DCYF). Kinson spoke with the victim and photographed the marks on her mouth.

On March 17, the victim was examined by Doctor Jean Peterson. She told Dr. Peterson that "she was hit by her stepfather in the face, the lip, and twice on the back." Dr. Peterson examined the victim's lip and found it swollen with a "slight irregularity to the inside of the lower lip." She described the inside of the victim's lip as "roughened up, [like] what happens when your lip hits your teeth, where your teeth catch your lip." Dr. Peterson found no injuries to the victim's back. She also conducted an external pelvic examination and found no evidence of sexual abuse.

On March 29, DCYF filed an abuse and neglect petition in district court alleging that the defendant hit the victim in the mouth. The victim later recanted her allegation in a note, which read: "Dad did not hit me. I fell out front on the stare [sic]. I was mad at my dad." After being informed of the note, DCYF withdrew the abuse and neglect petition.

The victim was moved into a foster home in September. On July 5, 2001, the victim's foster mother called Tamara Tessier, a DCYF worker, to report that the victim had disclosed to her that she had been sexually abused by the defendant. On July 6, Tessier, another DCYF worker, and Detective Rich Simmons of the Laconia Police Department interviewed the victim about her claim of sexual abuse. During the interview, the victim drew a picture and used an anatomical drawing and gestures to illustrate what the defendant had done to her. The defendant was subsequently charged with performing cunnilingus on the victim, digitally penetrating her and putting his mouth on her breast. He was also charged with second-degree assault and witness tampering.

On November 20, the State filed a motion to consolidate the sexual assault charges with the second-degree assault and witness tampering charges. The defendant objected, arguing that consolidation of all charges would prejudice his case, but indicated he would agree to consolidation of the sexual assault charges for one trial and the second-degree assault and witness tampering charges for a separate trial. Following a hearing on December 17, the trial court granted the State's motion to consolidate all charges. At trial, the court twice instructed the jury that it was to consider

each indictment independently and was not to let a finding of guilt on one indictment affect its decision on any other indictment.

At trial, Tessier and Dr. Peterson testified that the victim had markings on her mouth immediately following her argument with the defendant. The victim was unsure how she was injured, and testified that it was either because the defendant hit her or pushed her into a door. The victim testified that the defendant told her to write the recantation note, and that "if [she] didn't write [it] . . . [she] was not going to be part of the family." She admitted that the statements in the note were not true. The victim also described how the defendant sexually assaulted her. Dr. Peterson testified, however, that when she examined the victim for possible sexual abuse, the victim denied being sexually abused or touched.

At the close of the State's case, the defendant moved to dismiss the indictments charging him with cunnilingus and second-degree assault. The trial court denied the motions. The defendant was found guilty on all counts. This appeal followed.

*I. Sufficiency of the Evidence*

The defendant argues that the evidence was insufficient to support his convictions based upon: 1) the aggravated felonious sexual assault charge alleging cunnilingus; and 2) the second-degree assault charge alleging that he struck the victim in the face. "In an appeal challenging the sufficiency of the evidence, the defendant carries the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Dugas*, 147 N.H. 62, 66 (2001) (quotation and brackets omitted). In reviewing the sufficiency of the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. *Id.* Where the victim's testimony is sufficient to establish a *prima facie* case, no corroborating evidence is needed. *State v. Graham*, 142 N.H. 357, 360 (1997).

> It is well settled that the jury has substantial latitude in determining the credibility of witnesses. It is the jury which observes the witnesses, judges their credibility and hears their testimony, accepting or rejecting it in whole or in part. In determining witness credibility, the jury may accept some parts and reject other parts of testimony, and adopt one or the other of inconsistent statements by witnesses.

*Morrill v. Tilney*, 128 N.H. 773, 778 (1986) (citations and quotations omitted).

We first examine the aggravated felonious sexual assault charge alleging that the defendant engaged in cunnilingus. RSA 632-A:2, I, provides that: "A person is guilty of the felony of aggravated felonious sexual assault if he engages in sexual penetration with another person under any of the following circumstances: . . . (l) When the victim is less than 13 years of age." "Sexual penetration" is defined to include "[c]unnilingus." RSA 632-A:1, V(b). Cunnilingus is commonly understood to mean "stimulation of the vulva or clitoris with the lips or tongue." *State v. Zeta Chi Fraternity*, 142 N.H. 16, 23-24 (quotation omitted), *cert. denied*, 522 U.S. 995 (1997). The act of cunnilingus does not require actual penetration. *Id.* at 24.

The defendant contends that the evidence was insufficient because the victim could not remember whether she was wearing clothing at the time of the offense. Thus, he argues that since it was possible that he did not touch the victim directly, the State failed to prove that he stimulated the victim's vulva or clitoris with his lips or tongue. The State does not dispute that to prove cunnilingus it must establish that the defendant's lips or tongue directly touched the victim's vulva or clitoris, but argues that the evidence was sufficient to sustain the jury's verdict. We agree.

The victim was uncertain whether she was wearing "any clothes" when the defendant touched her. Nevertheless, she testified that the defendant touched her "private" with his tongue and mouth and drew an X between the legs on a drawing of a naked girl to illustrate. In addition, in response to the prosecution's question whether the defendant touched the victim with anything inside of her, the victim answered, "his tongue." Finally, in describing the defendant's actions with respect to penetration, the victim testified as follows:

Q. Where did [the defendant's] finger go?

. . . .

A. Right there, in the hole.

. . . .

Q. Between your legs, the area that you've X'd, that you call your private?

A. Yeah.

. . . .

Q. Okay. And when he — you said he used his finger, but he also used his tongue. Where did his tongue go?

·· A. In.

■ That the victim could not remember whether she was wearing any clothing at the time of the assault does not undermine the strength of the other evidence. Moreover, as the State suggests, cunnilingus could occur even if the victim were clothed since one can reach under, or pull aside, clothing with a hand in order to stimulate the vulva or clitoris with the lips or tongue. Thus, there was sufficient evidence for the jury to conclude beyond a reasonable doubt that the defendant touched the victim directly with his lips or tongue.

We next consider the second-degree assault charge alleging that the defendant hit the victim in the face. RSA 631:2, I, provides that: "A person is guilty of a class B felony if he: ... (d) Purposely or knowingly causes bodily injury to a child under 13 years of age." The State charged that the defendant "did knowingly cause bodily injury to a child under the age of thirteen; in that [he] struck a female child ... in the face with his hand causing a cut and bruised lip." The defendant argues that the State failed to prove the second-degree assault charge because the victim could not remember how her lip was injured; specifically, she could not remember whether the defendant hit her in the face or pushed her into a door. He contends, therefore, that the State failed to prove beyond a reasonable doubt that he caused injury to the victim's lip by striking her in the face, as alleged in the indictment.

The record supports the jury's verdict. Laura Kinson testified that she received a report from the victim's guidance counselor the day after the assault that the victim had an injury to her lip, and that the victim reported that the defendant had punched her. Kinson testified that the victim's lip was black and blue and she had a cut on the inside of her lip. Kinson also stated that the defendant told her that there was a "huge explosion and a yelling match," and that the victim told her mother that the defendant had hit her in the jaw. The victim's mother corroborated the fact that the victim had a mark on her mouth the night of the incident.

Further, Dr. Peterson testified that she examined the victim two days after the incident and that the victim told her that she was in an argument with the defendant, and "that in the argument ... she was hit by [the defendant] in the face, the lip." She also discovered that the victim had a swollen lip with a "slight irregularity" to the inside of her lower lip consistent with a person's lip getting hit by his or her teeth.

Finally, while the victim's testimony was vague and somewhat inconsistent, she did not recant the allegation that the defendant hit her in the face. In fact, the victim testified that her written note recanting her

claim that the defendant hit her was false and the product of the defendant's coercion.

On cross-examination, the defendant attempted to impeach the victim's credibility by reading responses she gave during an interview approximately four months after the incident, in which she was unsure as to whether her lip was injured because the defendant hit her or because he pushed her into a door. As we noted above, it is the jury's task to determine credibility issues. It may accept some parts and reject other parts of testimony, and adopt one or the other of inconsistent statements by witnesses. *Morrill*, 128 N.H. at 778. Given the short time period between the assault and the victim's statements to Dr. Peterson and her guidance counselor, it was reasonable for a jury to conclude that the victim's memory of what happened was better at that time than it was four months after the incident or at trial.

■ Considering all the evidence presented in a light most favorable to the State, therefore, we hold that a rational trier of fact could find beyond a reasonable doubt that the defendant was guilty of second-degree assault by hitting the victim in the mouth, as alleged in the indictment.

*II. Joinder*

The defendant next argues that the trial court committed reversible error by failing to sever the sexual assault charges from the second-degree assault and witness tampering charges.

■ We will uphold the trial court's decision not to sever cases unless we conclude that the decision constitutes an unsustainable exercise of discretion. *State v. Ramos*, 149 N.H. 118, 120 (2003). A trial court's decision will be found unsustainable if the defendant demonstrates that the ruling was clearly untenable or unreasonable to the prejudice of his case. *State v. Lambert*, 147 N.H. 295, 296 (2001).

■ In *State v. Ramos*, we recently adopted a new standard for trial courts to use when determining whether to join criminal offenses for trial. In that case, we departed from our previous approach to joinder, which allowed the trial court the flexibility of joining criminal offenses so long as "the evidence in support of each offense was brief, simple and unlikely to confuse a jury, and easily referable to each crime." *Ramos*, 149 N.H. at 120. Instead, we adopted the ABA Standards for joinder and severance of criminal offenses for trial, holding that "any two or more offenses committed by the same defendant may be joined for trial, upon the application of the prosecuting attorney or the defense." *Id.* at 128. We went on to explain, however, that:

Whenever two or more unrelated offenses have been joined for trial, the prosecuting attorney or the defendant shall have a right to severance of them. "Unrelated" offenses are those that are not "related." "Related" offenses are those that are based upon the same conduct, upon a single criminal episode, or upon a common plan.

*Id.*

*Ramos* had not been decided when the trial court granted the State's motion to consolidate the offenses in this case, so it applied the older standard that we have since declared "unworkable." *Id.* at 121. The State concedes that the offenses that were joined in this case were unrelated and, therefore, improperly joined under *Ramos.* As a result, the State agrees that the charges should have been severed. It contends, however, that the failure to sever is not reversible error because the error was harmless. The defendant counters that the harmless error doctrine is inapplicable because misjoinder of criminal offenses is prejudicial *per se.*

We have not addressed whether the error of misjoinder is subject to a harmless error analysis.

The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*State v. Dupont*, 149 N.H. 70, 74 (2003) (quotation omitted).

The United States Supreme Court has held that the error of misjoinder is subject to harmless error analysis. *United States v. Lane*, 474 U.S. 438, 449 (1986). In *Lane*, the Court found support in prior precedent rejecting "any *per se* rule for joinder errors requiring reversal, refusing to fashion a hard-and-fast formula that the joinder was error as a matter of law." *Id.* at 448 (quotation, ellipsis and brackets omitted). It noted that the test of injury resulting from misjoinder depends upon the special circumstances of each case. *Id.* Moreover, the Court stated that the use of harmless error analysis in misjoinder cases was further justified since the specific joinder standards under Rule 8 of the Federal Rules of Criminal Procedure are not themselves of constitutional magnitude. *Id.* at 446. Thus, the Court held that "an error involving misjoinder affects substantial rights and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 449 (quotation omitted).

Many state courts have followed *Lane* and apply harmless error analysis to misjoinder claims. *See, e.g., Byrd v. United States*, 551 A.2d 96, 99-100 (D.C. 1988); *State v. Anderson*, 63 P.3d 485, 488 (Idaho Ct. App. 2003); *Com. v. Jacobs*, 750 N.E.2d 1028, 1034 (Mass. App. Ct. 2001); *Santiago v. State*, 644 N.W.2d 425, 450-51 (Minn. 2002); *Robins v. State*, 798 P.2d 558, 564 (Nev. 1990). In a decision predating *Lane*, the Wisconsin Supreme Court expressly rejected the adoption of a *per se* rule that misjoinder is prejudicial error and can never be harmless. *State v. Leach*, 370 N.W.2d 240, 251 (Wis. 1985). The court noted that there was then a "trend in widening the application of the harmless error doctrine to misjoinder," *id.* at 252, and stated that the purpose of joinder, which is to "[promote] efficient judicial administration and court fiscal responsibility in conducting a trial on multiple counts in the absence of a showing of substantial prejudice, . . . would be substantially defeated if a defendant were entitled to separate new trials on all previously misjoined offenses, even when the defendant actually suffered no prejudice from the misjoinder." *Id.* at 252-53 (quotation omitted). Thus, the court held that the harmless error doctrine would apply to misjoinder.

The defendant argues that we should not follow *Lane* because it is inapposite. First, he asserts that *Lane* is distinguishable because it dealt with the misjoinder of defendants, not criminal offenses. We find this argument to lack merit. The Nevada Supreme Court expressly found that the reasoning in *Lane* supports the application of harmless error to the misjoinder of claims as well as defendants and cited federal courts that have applied the harmless error standard announced in *Lane* to the misjoinder of criminal offenses. *Mitchell v. State*, 782 P.2d 1340, 1343 (Nev. 1989) (citing cases).

Second, the defendant asserts that *Lane* is not persuasive because it involved the joinder rules under Federal Rule of Criminal Procedure 8, which we have rejected as the standard for joinder and severance, and not a State constitutional right. This argument is also unavailing. As the Court stated in *Lane*, "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446 n.8. While we cited Part I, Article 15 of our State Constitution in *Ramos, see Ramos*, 149 N.H. at 120, we did so only to the extent that misjoinder could result in depriving a defendant of a fundamentally fair trial. The joinder rules themselves, however, are not constitutional rights. Consequently, we reject the defendant's argument that a finding of misjoinder is — by definition — a finding that the defendant's right to a fair trial has been

compromised. Finally, the fact that we did not adopt the Federal Rules of Criminal Procedure method of joinder and severance does not affect our decision to use a harmless error analysis, since we are already presuming that the joinder of offenses by the trial court was erroneous.

▮ We find the reasoning in *Lane* and the aforementioned state cases persuasive and hold that misjoinder of criminal offenses is subject to harmless error analysis. We must therefore decide whether the misjoinder here was harmless.

▮ It is well settled in this jurisdiction that an error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error. *State v. Munson*, 126 N.H. 191, 193 (1985). The State bears the burden of proving that an error is harmless. *State v. Cort*, 145 N.H. 606, 613 (2000). An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. *State v. Smith*, 141 N.H. 271, 278 (1996).

▮ Having considered the record in this case, we cannot say that the erroneous joinder was harmless. First, the evidence was not overwhelming as to any particular offense. As the defendant correctly points out, this is a case dependent upon witness credibility. It is clear from the record that the victim, arguably the most critical witness in the case, had trouble recalling the specifics of the events in question and, at times, offered testimony inconsistent with her previous statements. While there were other witnesses who testified and, perhaps, bolstered the victim's credibility, we cannot conclude that such evidence, even when viewed together, was of such an overwhelming nature, quantity or weight as to outweigh the prejudice resulting from the misjoinder.

Further, the inherent danger of allowing the jury to consider inadmissible evidence in this case is strong. The State concedes that it is unlikely that the evidence relating to the sexual assault charges would be admissible at a trial on the second-degree assault and witness tampering charges. The purpose of excluding inadmissible evidence of other crimes or wrongs is to ensure that a defendant is tried on the merits of the crime charged and to prevent a conviction based upon evidence of other crimes or wrongs. *See State v. McGlew*, 139 N.H. 505, 509 (1995). It is beyond dispute that there is high potential for prejudice in permitting a jury to hear evidence of sexual assaults against a child when that evidence is otherwise not relevant to other charges. Thus, under these circumstances, there is a likelihood of prejudice in that the jury could have found the

defendant guilty of one set of charges based at least in part upon the evidence regarding the other set of charges. *See McGlew*, 139 N.H. at 509 (evidence of other wrongs is inherently prejudicial and increases likelihood that jury will decide case on improper basis).

The trial court did twice instruct the jury to consider each indictment independently and not let a finding of guilt on one indictment affect its decision on any other indictment. We generally presume that jurors follow the trial court's instructions. *See State v. Giordano*, 138 N.H. 90, 94 (1993). Nevertheless, we cannot conclude, beyond a reasonable doubt, that the verdict in this case was not affected by the error of misjoinder.

Accordingly, we remand to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.