Cheshire
No. 2003-512

THE STATE OF NEW HAMPSHIRE

v.

JOSEPH E. KING

Argued: March 11, 2004
Opinion Issued: May 17, 2004

*Peter W. Heed,* attorney general (*Karen E. Huntress,* assistant attorney general, on the brief and orally), for the State.

*McLane, Graf, Raulerson & Middleton, P.A.,* of Manchester (*Peter D. Anderson* and *George T. Campbell, III* on the brief), and *Robert A. Stein & Associates, PLLC,* of Concord (*Mr. Campbell* orally), for the defendant.

NADEAU, J. The defendant, Joseph E. King, was indicted on four counts of aggravated felonious sexual assault, *see* RSA 632-A:2, I(l) (Supp. 2003); RSA 632-A:2, II (Supp. 2003). Following a jury trial in the Superior Court (*Sullivan*, J.), he was convicted on one count. On appeal, the defendant argues that there is insufficient evidence to support a guilty verdict, that the verdicts are inconsistent, and that the court's failure to release exculpatory evidence violated his State and federal constitutional rights. We affirm.

The jury could have found the following facts. The defendant was married to Pamela King, the mother of the victim. In February 2002, the victim, the defendant and Pamela were living together in Alstead with other family members. Sometime in February, the victim, who was then under the age of thirteen, was practicing handstands in the living room near the couch. Every time she fell into the couch, the defendant flipped her over, "pushed aside [her] pants," and touched her "privates." The victim asked the defendant to stop, and he complied.

On another occasion, the defendant was folding clothes in the marital bedroom while the victim was watching. Again, she began practicing handstands, and the defendant put his mouth on her "privates." When asked how she knew that he used his mouth, she replied, "Because it was wet." The victim testified that another incident occurred in the bedroom and that, "pretty much the same thing happened as before." She further testified that the defendant licked her "pee pee," that he took off her pants and would not give them back to her, and that he put his fingers inside her.

During trial, the State used a picture of a naked girl as a demonstrative aid. When asked to explain the terms "privates," "pee pee" and "crotch," the victim drew a circle around the genital area and labeled it the "crotch" and "pee pee." She also indicated that "crotch" and "pee pee" are the same and that "privates" includes that same area of the body, plus the chest. The victim reiterated that the defendant touched and put his mouth on her "crotch" and "pee pee" under her clothing.

After the incidents, Mary Russell, the victim's grandmother, discovered a hand-written note from the victim. The note read: "Mom, Joe is Dad! You should never had [*sic*] merried [*sic*] him! He is grosse [*sic*]! Descusting [*sic*]! I hate him! We need to talk!" While her grandmother was reading the note, the victim grabbed it from her, tore it up, and threw it in the trash. At trial, when asked to explain her statement that, "Joe is Dad," the victim testified, "Because my dad did pretty much the same thing to my sister." Russell further clarified this statement by testifying that the victim's natural father was convicted of sexually assaulting his other daughter, the victim's half-sister. Concerning her other statements in the

note, the victim testified that the defendant was "gross and disgusting for what he did" to her.

The defendant was convicted on one count of aggravated felonious sexual assault. RSA 632-A:2, II. He was found not guilty on all remaining indictments.

On appeal, the defendant first contends that the evidence was insufficient to support the guilty verdict. He asserts that the victim's testimony was vague and uncorroborated. Because the lines she drew on the demonstrative aid only indicated the general crotch area, the defendant argues that the evidence lacked the specificity necessary to find that the defendant touched her genitalia. We disagree.

In raising a sufficiency of the evidence claim, "the defendant carries the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Mason*, 150 N.H. 53, 56 (2003). We examine each evidentiary item in the context of all the evidence, not in isolation. *Id.* Where the victim's testimony is sufficient to establish a *prima facie* case, no corroborating evidence is needed. *Id.*; RSA 632-A:6, I (1996).

RSA 632-A:2, II provides: "A person is guilty of aggravated felonious sexual assault without penetration when he intentionally touches whether directly, through clothing, or otherwise, the genitalia of a person under the age of 13 under circumstances that can be reasonably construed as being for the purpose of sexual arousal or gratification."

*State v. Graham*, 142 N.H. 357 (1997), and *State v. Blackstock*, 147 N.H. 791 (2002), are strikingly similar to this case. In *Graham*, the defendant appealed his convictions on one count of felonious sexual assault and three counts of aggravated felonious sexual assault. *Graham*, 142 N.H. at 359. The victim testified that the defendant "put[] his 'privates' in her mouth, and touch[ed] her 'privates.'" *Id.* The State also used a stuffed bunny as a demonstrative aid to support the inference that the victim's use of the word "privates" signified her vagina. *Id.* at 360-61. The defendant argued there was insufficient evidence to uphold his conviction by asserting that the victim's use of the word "privates" was not sufficiently specific to establish that he touched her genitalia. *Id.* at 359-60. We, however, concluded that the term "privates" was sufficiently clarified through additional testimony as well as the demonstrative evidence, so that the jury could reasonably infer that the word "privates" referred to the victim's genitalia. *Id.* at 360-61.

In *Blackstock*, the defendant appealed his conviction for aggravated felonious sexual assault. *Blackstock*, 147 N.H. at 792. At trial, the victim testified that the defendant was tickling her when his hand went under her

clothes and touched her twice "between her legs." *Id.* at 793 (quotation and brackets omitted). The victim also testified that the defendant touched her "private parts" and "private area." *Id.* at 793-94. In arguing that there was insufficient evidence to sustain the conviction, the defendant contended that the phrases "between her legs," "private parts," and "private area" were insufficient to establish that he unlawfully touched her genitalia. *Id.* at 793. We determined that based upon use of the term "private parts," combined with the fact that the victim identified the location of those parts as between her legs, the jury could have found beyond a reasonable doubt that the defendant touched her genitalia as charged in the indictment. *Id.* at 794-95.

The defendant here contends that the absence of physical evidence, eyewitnesses, or other corroborating evidence demonstrates that the evidence was insufficient to convict him. He relies heavily upon our decision in *State v. O'Neill*, 134 N.H. 182 (1991), to support his position. In *O'Neill*, we held that the victim's use of the term "bum," in conjunction with the act of pointing at a general area of his body, "did no more to indicate that he meant his anus, than that he meant his buttocks, and was not sufficient to permit a reasonable inference as to the penetration element of the criminal charge." *O'Neill*, 134 N.H. at 187. *O'Neill*, however, is readily distinguishable from the instant case.

First, while we noted the paucity of corroborating evidence in *O'Neill*, *id.*, we underscore that where, as here, the victim's testimony itself is sufficient to establish a *prima facie* case, no corroborating evidence is needed. *Mason*, 150 N.H. at 56.

Second, in *O'Neill*, the State elicited no additional testimony to demonstrate that the victim's use of the word "bum" differed from the common definition of the term, which is "buttocks." *O'Neill*, 134 N.H. at 187. In this case, however, as in *Graham* and *Blackstock*, the meaning of the terms "privates," as used by the victim, was clarified through additional testimony. The victim explained that the word "privates," "crotch" and "pee pee" are the same, and indicated that the defendant touched her there and put his fingers inside her.

Additionally, in *O'Neill*, the defendant was indicted for a crime requiring proof of penetration as an element of the offense. *O'Neill*, 134 N.H. at 186-87. Thus, the State was required to show that the defendant penetrated the anus of the victim. *Id.* at 187. The defendant, here, was convicted under RSA 632-A:2, II, which does not require proof of penetration, but rather, that an intentional touching occurred.

Moreover, in both *Graham* and *Blackstock*, we noted that use of the word "privates" to connote genitals accords with the common meaning of the word. *See Graham*, 142 N.H. at 361; *Blackstock*, 147 N.H. at 794. We

see no reason to deviate from this definition here. Even if the meaning of the word "privates" were ambiguous in this context, the victim testified that the defendant touched her "pee pee." Under the circumstances, there can be little doubt that the phrase "pee pee" refers to the victim's genitalia.

Finally, in *O'Neill*, the State did not use any charts or dolls to augment the victim's testimony. *O'Neill*, 134 N.H. at 183. In contrast, here, the State utilized a demonstrative aid as it did in *Graham*. Despite the defendant's characterization to the contrary, the victim drew a circle closely encompassing the genital area of a picture of a naked girl, and indicated that this area was the "crotch" and "pee pee," and that the "privates" included this area as well as the chest. Therefore, based upon the victim's testimony coupled with the demonstration, the jury could fairly infer that the victim's use of these terms referred to her genitalia. *See Graham*, 142 N.H. at 361. Viewing the victim's testimony and all reasonable inferences drawn therefrom in the light most favorable to the State, the jury could have found beyond a reasonable doubt that the defendant unlawfully touched the victim's genitalia. *See id.*

Next, the defendant contends that because the State's case was based wholly upon the victim's testimony, its "decision to convict and find the witness credible on one count, while acquitting and finding her incredible on the remaining three, is an irrational result." Thus, he argues the verdicts cannot be reconciled on a rational basis, and are reversibly inconsistent. *See State v. Chapin*, 128 N.H. 355, 357-58 (1986). The State avers that the verdicts are not inconsistent, and alternatively, the mere potential for an inconsistent verdict does not entitle the defendant to relief. We agree.

In *State v. Brown*, 132 N.H. 321 (1989), the defendant argued that the jury's verdict that he was guilty of being an accomplice to receiving stolen property on one date is inconsistent with its simultaneous verdict that he was not guilty of committing the same offense on two separate dates. *Brown*, 132 N.H. at 328. We noted that, "under federal and State law, the inconsistency of simultaneous jury verdicts against a single defendant on a multiple-count criminal indictment need not be rationally reconciled, and does not entitle the defendant to relief." *Id.* at 328-29. Accordingly, in *Brown*, we adopted the reasoning of the United States Supreme Court in *United States v. Powell*, 469 U.S. 57, 68-69 (1984), that the better rule is to "insulate jury verdicts from review." *Brown*, 132 N.H. at 329. One policy supporting this rationale is clear and well established:

> [T]he jury has substantial latitude in determining the credibility
> of witnesses. It is the jury which observes the witnesses, judges
> their credibility and hears their testimony, accepting or rejecting
> it in whole or in part. In determining witness credibility, the jury
> may accept some parts and reject other parts of testimony, and
> adopt one or the other of inconsistent statements by witnesses.

*Mason*, 150 N.H. at 56 (quotation omitted). Because the jury observes and evaluates the testimony of the witnesses, it is generally in a better position than this court to determine the facts and to assess the credibility of witnesses. *Chapin*, 128 N.H. at 357.

Moreover, we have previously concluded that because courts are unable to ascertain which verdict, if any, was rendered erroneously, the mere fact that verdicts appear to be rationally irreconcilable is an insufficient reason to reverse a guilty verdict. *Brown*, 132 N.H. at 330. Even if verdicts are inconsistent, it should not be assumed that the jury error necessarily aids either party. *See Powell*, 469 U.S. at 65. Indeed, "[i]t is just as likely that the jury correctly reached the guilty verdict on one count, and through leniency or mistake arrived at the not guilty verdict on a different count of the same offense." *Brown*, 132 N.H. at 329. Thus, the defendant is not entitled to relief.

■ Regardless, in this case, it cannot be said that the verdicts were inconsistent because the jury was free to consider all of the evidence separately in each indictment, and to "accept some parts and reject other parts of testimony, and adopt one or the other of inconsistent statements by witnesses," including the victim's testimony. *Mason*, 150 N.H. at 56 (quotation omitted). In addition, the charge of which the defendant was convicted is the only one upon which he gave contradicting testimony.

Finally, the defendant argues that the trial court violated his due process rights as well as his right to confrontation under Part I, Article 15 of the New Hampshire Constitution and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution by refusing to release the investigating officer's personnel files, which may contain potentially exculpatory evidence. The State asserts that the defendant failed to produce a sufficient record on this issue, and, therefore, we should decline to address it. We agree.

In New Hampshire, the moving party has the burden of presenting a sufficient record to allow proper review by this Court. *State v. Stearns*, 130 N.H. 475, 491 (1988). The defendant alleges that the trial court reviewed the officer's personnel files *in camera*. The defendant, however, has here failed to produce the personnel files that we need in order to review

properly the trial judge's decision not to release them. In the absence of a record upon which we can base our review, we cannot speculate as to the trial judge's decision. *See id.* Consequently, we decline to address this issue.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.