Carroll
No. 2003-142

THE STATE OF NEW HAMPSHIRE

v.

THOMAS P. COSSETTE

Argued: July 15, 2004
Opinion Issued: August 31, 2004

356

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*Dawnangela Minton*, assistant appellate defender, of Concord, on the brief, and *Chris McLaughlin*, assistant appellate defender, of Concord, orally, for the defendant.

DUGGAN, J. The defendant, Thomas P. Cossette, was convicted after a jury trial in Superior Court (*O'Neill*, J.) on two counts of aggravated felonious sexual assault (AFSA). *See* RSA 632-A:2, I (Supp. 2003). On appeal, the defendant argues that: (1) the trial court erred in granting the State's motion to join the charges; (2) the State presented insufficient evidence to prove that the defendant had authority over the victim, which he used to coerce her to submit; and (3) the trial court erred when it denied his motion for a new trial without a hearing. We affirm.

The defendant was employed as the assistant manager of the Subway restaurant in Ossipee. In early June 2000, the fifteen-year-old victim began working at the restaurant. The victim alleged that the defendant sexually assaulted her in the workplace on three separate occasions.

A grand jury subsequently indicted the defendant on six counts of AFSA, see id., and one count of felonious sexual assault (FSA), see RSA 632-A:3, II (1996). In September 2001, the State moved to join the charges. The defendant objected, arguing that his right to a fair trial would be jeopardized by joinder of the charges. The court granted the State's motion.

A jury trial was held in 2002. The jury found the defendant guilty on two counts of AFSA but not guilty on all other charges. Prior to sentencing, the State entered a nolle prosequi on one of the two convictions. This appeal followed.

The defendant first argues that the trial court erred in granting the State's motion to join the charges. On appeal, the State concedes that the charges against the defendant were unrelated and, therefore, under State v. Ramos, 149 N.H. 118 (2003), the defendant was entitled to severance of the unrelated charges. The State argues, however, that the trial court's error in joining the charges was harmless.

██ We have previously held that misjoinder of criminal offenses is subject to harmless error analysis. State v. Mason, 150 N.H. 53, 62 (2003). It is well settled in this jurisdiction that an error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error. Id. The State bears the burden of proving that an error is harmless. Id. An error may be harmless beyond a reasonable doubt if the alternative evidence of a defendant's guilt is of an overwhelming nature, quantity or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. Id.

For purposes of this appeal, we assume, as the State concedes, that joinder of the charges was improper. Nonetheless, after reviewing the record, we conclude that the State has satisfied its burden of proving that any error the trial court committed in joining the charges was harmless.

First, the verdict demonstrates that the jury considered each charge separately. As set forth above, the grand jury indicted the defendant on six counts of AFSA and one count of FSA. Two AFSA indictments alleged that the defendant assaulted the victim between June 2, 2000, and July 2, 2000. Two other AFSA indictments alleged that the defendant assaulted the victim on July 10, 2000. The remaining two AFSA indictments alleged that the defendant assaulted the victim between August 1, 2000, and

October 10, 2000. With respect to the FSA indictment, it also alleged that the defendant assaulted the victim between June 2, 2000, and July 2, 2000. The jury returned guilty verdicts only on those AFSA indictments that alleged that the defendant assaulted the victim between June 2, 2000, and July 2, 2000. This is compelling evidence that the jury considered the charges separately and was not influenced by evidence of the other alleged assaults.

Second, there was overwhelming evidence to support the jury's conclusion that the defendant assaulted the victim between June 2, 2000, and July 2, 2000. The victim testified that approximately two weeks before school ended for the summer, she went to Subway on an afternoon that she was not working to pick up dinner for herself and her stepbrother. The defendant was working alone. After preparing the victim's order, the defendant asked her to join him on the back porch for a cigarette break. The victim agreed. While they were on the back porch, the defendant told the victim that he was having a bad day and that "only one thing" could make it better. When the victim asked what that was, the defendant replied, "[A] good blow job." The victim became nervous, said she had to leave and walked back into the restaurant.

The defendant followed the victim into the restaurant, grabbed her arm and pulled her into the cooler. He told the victim to perform oral sex, and said that she "ow[ed] him." He put his hands on the victim's neck and shoulders and pushed her toward the ground. The defendant took his penis out of his pants, placed his hands on the back of the victim's head and put his penis in her face. The victim told the defendant to stop. Instead, the defendant pushed his penis into her mouth. The victim performed oral sex on the defendant until he ejaculated into her mouth. After the assault, the victim felt scared and violated. She left the restaurant in tears.

The victim's testimony was corroborated by other witnesses. The victim's best friend, Karena Magee, testified that when the victim called her on the evening of the assault, she was "[p]anicked, nervous, [and] really upset." Magee's mother, Chris Cahill, testified that she learned of the assault that same evening, went to the Subway restaurant and confronted the defendant. Cahill testified that the defendant admitted that "something had happened and . . . he knew it was wrong."

In arguing that joinder of the charges was not harmless, the defendant contends that if the charges were not joined, the jury would not have heard testimony about the other alleged assaults. He further contends that we cannot find beyond a reasonable doubt that the verdict was not affected by the erroneously admitted evidence.

Here, however, the defendant's own testimony blunted the prejudice of the admission of evidence of the other alleged assaults. At trial, the

defendant testified that the victim performed oral sex on him but maintained that it was consensual. The defendant therefore conceded that he committed a sexual act with a teenage girl. His own admission of reprehensible and inappropriate conduct undoubtedly offended the jury. *Cf. State v. Dukette*, 145 N.H. 226, 231 (2000). Thus, the impact of the erroneously admitted evidence of the other alleged assaults was diminished by the defendant's admissions.

In sum, our review of the record demonstrates that any error the trial court committed in joining the charges was harmless. Most importantly, the verdict demonstrates that the jury considered the charges separately. In addition, the evidence against the defendant was overwhelming in nature. Further, the defendant's own admissions diminished the prejudicial effect of any erroneously admitted evidence.

The defendant next argues that the State presented insufficient evidence to support a finding that he was in a position of authority over the victim, which he used to coerce her to submit. We disagree.

To succeed on a sufficiency of the evidence claim, a defendant must show that, viewing the evidence in the light most favorable to the State, no rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Fortier*, 146 N.H. 784, 794 (2001). All reasonable inferences derived from the evidence are drawn in the light most favorable to the State. *Id.*

The defendant was convicted of AFSA in violation of RSA 632-A:2, I(k), which provides:

> I. A person is guilty of the felony of aggravated felonious sexual assault if he engages in sexual penetration with another person under any of the following circumstances:
>
> . . . .
>
> (k) When, except as between legally married spouses, the victim is 13 years of age or older and under 18 years of age and the actor is in a position of authority over the victim and uses this authority to coerce the victim to submit.

The defendant argues that because his position as an assistant manager did not give him the right to discipline, suspend or fire employees, the evidence was insufficient to establish that he had authority over the victim. The statute does not define "position of authority." We have, however, previously construed the term "authority" to mean: "power to require and receive submission: the right to expect obedience: superiority derived from a status that carries with it the right to command and give final decisions."

*Fortier*, 146 N.H. at 794 (quotation omitted). We conclude that the jury had ample evidence before it to find that the defendant was in a position of authority over the victim when he assaulted her.

The defendant was the assistant manager of the Subway restaurant during the summer of 2000. His responsibilities included training employees, supervising their work and determining the timing of their breaks. Although the defendant did not have the authority to discipline, suspend or fire employees, the victim's best friend, who also worked at Subway, testified that the defendant was the "boss." She further testified that the defendant told the employees "how to do things and what to do."

We conclude that the defendant's role as the assistant manager of Subway, and the victim's subservient role as an employee of the restaurant, gave the defendant the power to require submission from her, as well as the right to expect obedience. The defendant was in charge of supervising the victim's work. He alone determined, for example, when she could take breaks. Accordingly, a rational jury could have found beyond a reasonable doubt that the defendant held a position of authority over the victim.

The defendant further argues that the evidence failed to establish that he used his position of authority to coerce the victim to submit. We disagree.

Although the word "coerce" is not defined in the statute, we have previously construed the term broadly enough to include undue influence, physical force, threats or any combination thereof. *State v. Foss*, 148 N.H. 209, 214 (2002). We have further stated that coercion need not be overt, but may consist of the subtle persuasion arising from the position of authority. *Fortier*, 146 N.H. at 795.

The evidence presented at trial makes it difficult to divorce the defendant's position of authority as assistant manager from his interactions with the victim. *See id.* at 796. The victim met the defendant through her employment at Subway. He trained her to do her job and then supervised her as she did it. In essence, the defendant was the victim's boss.

The defendant used his position of authority as the victim's supervisor to develop a relationship of trust with her. *See id.* at 795. The victim testified that when she first started working at Subway, the defendant was "funny" and "nice" and "joke[d] around a lot." The defendant pretended to confide in the victim by telling her that he was having marital problems. He then asked the victim questions about her sexual experiences and answered questions she posed about sex.

After building a relationship with the victim, the defendant sexually assaulted her. The defendant tried to persuade the victim to give him oral sex by telling her that he was having a bad day and only a "good blow job" could make it better. After demanding oral sex from the victim, the defendant told her that she "ow[ed] him." The victim testified that when the defendant made this comment, she thought he was suggesting that she was required to accommodate his sexual demands because he had allowed her to take cigarette breaks at work. The victim submitted to the defendant because she felt that she had no other choice.

■ This case falls squarely within the parameters of coercion by subtle persuasion that we identified in *Fortier*. Based upon the foregoing evidence, we conclude that a rational jury could have found beyond a reasonable doubt that the defendant used his position of authority to exert subtle pressure on the victim in an effort to force her to submit to his sexual demands. *See id.* at 796.

Finally, the defendant argues that the trial court erred when it denied his motion for a new trial based upon newly discovered evidence without a hearing. We disagree.

■ To prevail on a motion for a new trial based upon newly discovered evidence, the defendant must prove: (1) that he was not at fault for failing to discover the evidence at the former trial; (2) that the evidence is admissible, material to the merits and not cumulative; and (3) that the evidence is of such a character that a different result will probably be reached upon another trial. *State v. Davis*, 143 N.H. 8, 11 (1998). Whether newly discovered evidence requires a new trial is a question of fact for the trial court. *Id.* We will sustain the trial court's decision unless its conclusion is clearly unreasonable. *Id.*

Prior to sentencing, the defendant moved for a new trial. In his motion, the defendant stated that he had recently discovered that the victim told her friend that the sexual contact between herself and the defendant was consensual. The trial court denied the defendant's motion "based on the parties' offers of proof." The court ruled that: (1) the defendant should have known of the witness's existence; (2) the evidence had little or no relevance; (3) it was cumulative; and (4) it was inadmissible.

Even assuming that the defendant has satisfied the first two prongs of our analysis, he has failed to establish that the evidence is of such a character that a different result will probably be reached upon another trial.

We first note that because the statements of the newly discovered witness would otherwise be inadmissible hearsay, N.H. R. Ev. 802, they had no substantive or independent value, *see State v. Gomes*, 116 N.H. 113,

114 (1976). Therefore, the defendant's newly discovered evidence would be admissible only for the purpose of attacking the credibility of the victim. *See id.* The statements could not be used to establish consent.

At trial, the defendant took steps to impeach the victim's testimony. The victim was strenuously cross-examined about her allegations. The defendant also called Lara Crane, a counselor at the victim's high school, to testify. Crane testified that the victim told her that she had been sexually assaulted by the defendant, but described only one incident of assault. In his closing argument, defense counsel used Crane's testimony to argue that the victim's allegations were not credible.

■ Because the victim's credibility was attacked at trial and the newly discovered evidence would only be admissible for the purpose of further impeachment of the victim, the defendant has failed to prove that the new evidence is of such a character that a different result will probably be reached upon another trial. Moreover, as noted above, the evidence against the defendant with respect to the charge of which he was convicted was compelling. We therefore conclude that the trial court's decision to deny the defendant's motion for a new trial was not clearly unreasonable.

The defendant also argues that the trial court erred in not holding a hearing on his motion for a new trial. We disagree.

We have previously held that the trial court has discretion to deny a requested oral argument or evidentiary hearing if the proffered reasons for holding such a hearing are insufficient. *State v. Roy,* 138 N.H. 97, 98 (1993). To show an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's decision was clearly unreasonable and that the decision prejudiced his case. *See State v. Belton,* 150 N.H. 741, 745 (2004).

We hold that it was well within the trial court's discretion to deny the defendant's request for a hearing on the newly discovered evidence. The defendant's motion for a new trial included an analysis of the relevant law, as well as a summary of defense counsel's conversations with the new witness and other relevant witnesses. The motion included three affidavits from individuals who attested that the information contained in the motion was true. The State and the guardian ad litem filed objections to the defendant's motion. The defendant then filed responses to the objections.

■ The defendant has not demonstrated that the trial court's decision to deny his request for a hearing was unreasonable. To the contrary, the defendant's motion for a new trial, the affidavits that he submitted to the court and his responses to the objections provided him with a sufficient opportunity to be heard. We therefore conclude that the trial court did not

commit an unsustainable exercise of discretion in denying the defendant's request for a hearing.

*Affirmed.*

DALIANIS, J., concurred; GALWAY, J., dissented.

GALWAY, J., dissenting. I disagree with the majority's holding that the failure to sever charges in this case constituted harmless error.

In *State v. Ramos*, 149 N.H. 118 (2003), we articulated a framework for determining when and whether charges in criminal cases should be severed. *See State v. Mason*, 150 N.H. 53, 59 (2003). On appeal, the State has conceded that "the charges against the defendant were not related," and that the defendant "was therefore entitled to severance of the unrelated charges." Therefore, the question before the court, given the State's concessions, is whether the joinder of charges constituted harmless error beyond a reasonable doubt. "It is well settled in this jurisdiction that an error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error." *Id.* at 62. I cannot reach that conclusion here.

We have long recognized that "[e]vidence of another offense in a criminal proceeding is inadmissible either to establish guilt or to show that a defendant would be likely to commit the crime with which he is charged." *State v. LaBranche*, 118 N.H. 176, 178 (1978). "The exclusion of such evidence is grounded on the potentiality for prejudice and a fear that the generality of the jury's verdict might mask a finding of guilt based on an accused's past or alleged criminal acts." *Id.* There is an especially "high potential for prejudice" in joining charges of sexual assault involving minors. *Ramos*, 149 N.H. at 121 (quotation omitted). Indeed, "[i]t is beyond dispute that there is high potential for prejudice in permitting a jury to hear evidence of sexual assaults against a child when that evidence is otherwise not relevant to other charges." *Mason*, 150 N.H. at 62.

The State argues that the evidence of the other sexual assaults was relevant to prove that the defendant was in a position of authority over the victim. I believe that any probative value of such graphic evidence concerning other sexual assaults was substantially outweighed by the danger of unfair prejudice. Moreover, because the defendant did not deny that some of the sex acts occurred, but rather only challenged whether those acts were consensual, the repeated introduction of graphic evidence of other sexual assaults seems particularly problematic. Under these circumstances, then, it is likely that the jury could have found the defendant guilty of some charges, based at least in part upon the evidence

concerning the other charges, *see id.*—charges that the State concedes should have been severed.

Second, the fact that the jury convicted the defendant of two counts of aggravated felonious sexual assault, while acquitting him of four additional counts of aggravated felonious sexual assault and one count of felonious sexual assault dealing with essentially similar facts does not support the State's harmless error analysis. The fact that the jury acquitted the defendant of five charges equally suggests that the State's case against him was less than overwhelming. *See State v. Whittaker*, 138 N.H. 524, 530 (1994). In such a graphic sexual assault trial where credibility is a major factor, the five acquittals, in my mind, undermine the State's ability to prove beyond a reasonable doubt that the improper joinder of these charges did not affect the two guilty verdicts. Given that the State concedes that the charges should have been severed, it is likely that the verdicts were affected by the improper consolidation.

Under the circumstances of this case, I do not believe the State has satisfied its burden of proving harmless error beyond a reasonable doubt. *See State v. Crosby*, 142 N.H. 134, 139 (1997). The State "should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds." *LaBranche*, 118 N.H. at 180 (quotation omitted).

Given that the joinder of charges in this case did not constitute harmless error, I would vacate and remand for a new trial. Accordingly, I respectfully dissent.