Hillsborough-southern judicial district
No. 2002-474

### THE STATE OF NEW HAMPSHIRE

v.

### RUBEN GONZALEZ

Argued: July 10, 2003
Opinion Issued: September 30, 2003

*Peter W. Heed,* attorney general (*Karen E. Huntress,* assistant attorney general, on the brief and orally), for the State.

*Dawnangela Minton,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

DUGGAN, J. The defendant, Ruben Gonzalez, was convicted after a jury trial in Superior Court (*Hicks,* J.) of three counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (Supp. 2002), two counts of felonious sexual assault, *see* RSA 632-A:3 (Supp. 2002), and two counts of misdemeanor sexual assault, *see* RSA 632-A:4 (1996). The victim was the defendant's stepdaughter, who was eight years old when the assaults began. We affirm.

On appeal, the defendant argues that the trial court erred when it admitted testimony from two lay witnesses regarding the tendency of victims to fail to contemporaneously report abuse and the tendency of victims to recant or deny abuse.

At trial, the State's first witness was Kris Geno, a New Hampshire Division for Children, Youth and Families social worker. The State questioned Geno as to whether she had "received any training and education relative to specifically dealing with allegations of sexual abuse." Geno testified that she had received training on interviewing sexual abuse victims, victim recantations, and dealing with different types of sexual offenders. The State asked Geno about the frequency of victim recantations or denials. Geno testified that denials or recantations were not unusual.

Detective Brooke Lemoine also testified at trial. After eliciting testimony from him regarding his training and experience, the prosecutor asked, "In your experience with your caseload, are sexual assaults reported contemporaneous with the abuse?" Lemoine testified that contemporaneous disclosure of sexual abuse is unusual.

The defendant argues that this testimony was inadmissible. The State argues that the defendant failed to preserve the issue of the admissibility of Geno's testimony because he failed to make a timely objection. In the alternative, the State argues that Geno's and Lemoine's testimony was admissible lay witness testimony because it was based upon their perceptions and not specialized training. The State further argues that, even if the testimony was inadmissible, the error was harmless.

We first address the State's argument that the defendant failed to preserve the issue of Geno's testimony for our review. The defendant first objected when the State asked Geno whether she "received any training and education relative to specifically dealing with allegations of sexual abuse?" During the bench conference, the prosecutor offered that the reason she was "asking [Geno] for her education and her training background, and what she has done specifically in her caseload, is because I intend to ask her about recantations and denials." In response, defense counsel further objected stating that "the offer of proof's been made [that the prosecutor's] gonna [sic] ask about recantations and denials. That is expert testimony. There was — you know, there was no expert testimony noticed up. That is absolutely inappropriate." The trial judge noted that defense counsel was objecting to the prosecution's anticipated question regarding Geno's experience with recantations and denials and permitted the anticipated question over the defendant's objection.

The State then asked Geno, "In your experience, are denials or recantations unusual?" Defense counsel did not object to this question. Geno answered, "No." Next, the State asked Geno: "In your experience, why or why not?" Defense counsel immediately objected. At the bench conference, the defendant again raised his objection that Geno's testimony constituted expert testimony, requiring that she be qualified as an expert. This time the trial court sustained the objection.

"The general rule in New Hampshire is that a contemporaneous and specific objection is required to preserve an issue for appellate review." *State v. Searles*, 141 N.H. 224, 230 (1996) (quotation omitted). In *State v. Bouchard*, 138 N.H. 581, 584 (1994), we held that the defendant's oral motion on the day of trial to exclude certain evidence was adequate to preserve the issue, thus making a contemporaneous objection at trial unnecessary. The oral motion served the purpose of the contemporaneous objection requirement by allowing the trial court the opportunity to correct any claimed errors. *State v. Mello*, 137 N.H. 597, 600 (1993).

■ At the bench conference that occurred before Geno's testimony was admitted, defense counsel anticipated that after asking Geno about her training and education, the prosecutor would then ask her about recantations and denials and that this would constitute inadmissible expert testimony. In addition, the trial judge acknowledged that defense counsel was objecting to the anticipated question and ruled accordingly. This objection, like the oral motion in *Bouchard*, adequately preserved the issue even though the objection was made before the pertinent question was asked. *Bouchard*, 138 N.H. at 584. Defense counsel stated the specific basis for the objection and gave the trial court the opportunity to correct

any claimed errors. *Mello*, 137 N.H. at 600. We conclude this objection adequately preserved the issue of the admissibility of Geno's testimony.

We next consider whether the trial court erroneously admitted Geno's testimony regarding victim recantations. We review the ruling to determine whether it was an unsustainable exercise of discretion. *See State v. Lambert*, 147 N.H. 295, 296 (2001). We will reverse the trial court "only if the appealing party can demonstrate that the ruling was untenable or unreasonable and that the error prejudiced the party's case." *State v. Searles*, 141 N.H. 224, 227 (1996) (quotation omitted).

The question of the admissibility turns on the characterization of Geno's testimony. Expert testimony involves "matters of scientific, mechanical, professional or other like nature, which requires special study, experience, or observation not within the common knowledge of the general public." *State v. Martin*, 142 N.H. 63, 65 (1997) (quotation omitted). Lay testimony must be confined to "personal observations which any lay person would be capable of making." *Id.* (brackets and quotation omitted). If Geno's testimony is expert testimony, then it was not properly admitted as lay testimony. *See id.* at 66; *accord Sample v. State*, 643 So. 2d 524, 529-30 (Miss. 1994) (plurality opinion) (stating that testimony must be considered expert testimony if in order to testify, "the witness must possess some experience or expertise beyond that of the average, randomly selected adult"). If Geno's testimony is not expert testimony, then it must be determined whether it is permissible lay testimony. *See* N.H. R. Ev. 602, 701. Because Geno's testimony regarding victim recantations is expert testimony, it was erroneously admitted as lay testimony.

This case is similar to the testimony at issue in *State v. Martin*, 142 N.H. 63 (1997). In *Martin*, a sexual assault victim's treating physician testified to the physical condition of the victim based on the physician's personal observations during an internal gynecological examination. *See Martin*, 142 N.H. at 66. In determining whether this testimony should be treated as expert testimony, we stated that: "The focus is not solely on whether a professional speaks from personal observation, but also whether the personal observations require specialized skills not within the ken of the ordinary person." *Id.* We also explained that lay testimony must be confined to "personal observations which any lay person would be capable of making" and is improperly admitted when it goes "beyond mere observation and require[s] professional training not possessed by the public at large." *Id.* at 65-66 (brackets and quotation omitted). While in *Martin* the State argued that the physician's testimony was not expert testimony because it involved personal or first-hand knowledge based on her experience, we held that it was expert testimony because the

observations and findings "required special skills and knowledge not possessed by the average layperson." *Id.* at 66-67; *see Seal v. Miller,* 605 So. 2d 240, 244 (Miss. 1992) (holding that police officer's testimony based on experience investigating accidents is not lay testimony).

The testimony at issue in the present case involved whether, in sexual abuse cases, victim denials and recantations were not unusual. The tendency or frequency of sexual abuse victims' denials and recantations are not observations that any layperson is capable of making, but rather require special experience and knowledge not possessed by the public at large. We have recognized that a layperson is not capable of making such observations because "a child's delayed disclosure of abuse, inconsistent statements about abuse, and recantation of statements about abuse, may be puzzling or appear counterintuitive to lay observers when they consider the suffering endured by a child who is continually being abused." *State v. Cressey,* 137 N.H. 402, 411 (1993). Because of its counterintuitive nature, expert testimony may be permitted to educate the jury about apparent inconsistent behavior by a victim following an assault and to "provid[e] useful information that is beyond the common experience of an average juror." *State v. MacRae,* 141 N.H. 106, 109 (1996).

Here, Geno testified that, in sexual abuse cases, victim denial or recantations are not unusual. As a social worker, she was trained in interviewing sexual abuse victims and dealing with recantations. Geno's employment and training provided her with specialized knowledge and experience not available to the general public about the frequency of victim denials and recantations. While her testimony is based upon her personal experience with sexual abuse cases, her conclusion that victim denials are not unusual is based upon her training, experience, and observations that are not within the common knowledge of the general public and are beyond the common experience of an average juror. *See Martin,* 142 N.H. at 65; *MacRae,* 141 N.H. at 109. Because Geno's testimony regarding victim denials and recantations required specialized knowledge and experience, we conclude that it was not properly admitted lay testimony.

For the same reason, we conclude that the trial court erroneously admitted Lemoine's testimony. Lemoine testified that he was trained to interview child victims of sexual abuse. He testified that he attended "advanced interviewing technique schools, to enable me to better work these types of investigations." Lemoine testified that, in more than four years, he has served as the lead investigator on at least seventy-four sexual assault cases. Lemoine further testified that it is not unusual for a sexual assault victim to delay disclosure.

■ Like Geno, Lemoine received training and had experience with sexual assault victims not possessed by the public at large. While Lemoine's testimony was based upon his personal observations while investigating sexual assault cases, his observations and conclusions regarding the frequency of delayed disclosures required specialized training, experience and skill "not within the ken of the ordinary person." *Martin*, 142 N.H. at 66. Geno's and Lemoine's testimony regarding "the delayed reporting of abuse, inconsistent recountings of the abuse, and recantation of the initial disclosure" is expert testimony and inadmissible as lay witness testimony. *State v. Chamberlain*, 137 N.H. 414, 417 (1993).

Finally, we consider whether the admission of Geno's and Lemoine's testimony constituted harmless error. "The burden to establish [harmless error] lies with the State." *State v. Reynolds*, 136 N.H. 325, 327 (1992). That burden is "satisfied by proof beyond a reasonable doubt that the erroneously admitted evidence did not affect the verdict." *State v. Thibedau*, 142 N.H. 325, 329 (1997). In deciding whether the State has met its burden, we consider the strength of the alternative evidence presented at trial, and the character of the inadmissible evidence, including whether the evidence was cumulative or inconsequential. *State v. Hodgdon*, 143 N.H. 399, 401-02 (1999).

Here, as in *State v. Lemieux*, 136 N.H. 329, 331-32 (1992), "the evidence most damaging to the defendant was the victim's description, in vivid detail, of the various sexual acts." The victim, who was seventeen years old by the time of trial, was able to remember the details of assaults that occurred up to nine years earlier. She testified that the first assault occurred in the fall of 1992 when the defendant touched her breasts while she was showering. According to the victim, she was ten years old when the defendant assaulted her in the bathroom again. The defendant entered the bathroom as the victim was brushing her hair wearing only a towel. He turned her around, picked her up, sat her on the sink, unzipped his pants, took out his penis, and started rubbing it against her vagina. The victim also testified that the defendant licked her vagina in her bedroom when she was twelve years old. The victim further testified that while she was in her mother's bedroom watching a movie, the defendant entered, pushed her onto the bed when she attempted to leave, touched her breasts, kissed her lips, pulled his pants down to his ankles, masturbated and had intercourse with her.

She also testified that when she was thirteen, the defendant yelled at her for having boys in her bedroom. At that time, the defendant touched her breasts over her shirt. The victim testified that the last assault occurred at the Red Roof Inn, where the family lived after a fire destroyed

their apartment. She testified that she entered the room the defendant shared with her mother and brothers to get a drink when the defendant touched her breasts over her clothing.

■ The victim's sister, Kim, testified that on January 22, 1997, the victim came into her bedroom and told her that the defendant "was touching her." Kim testified that in late December 1997, she attended a meeting with the victim, the victim's mother, the defendant and the defendant's brother and sister-in-law. At the family meeting, the defendant apologized and "said it wouldn't happen again." Given the defendant's admission and the victim's detailed accounts of the assaults, we conclude that Geno's and Lemoine's inadmissible lay testimony was inconsequential, and thus the error was harmless. *Lemieux*, 136 N.H. at 332.

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred.