Hillsborough-northern judicial district
No. 2005-021

### THE STATE OF NEW HAMPSHIRE

v.

### DANIEL COCHRANE

Argued: February 8, 2006
Opinion Issued: April 26, 2006

*Kelly A. Ayotte*, attorney general (*David W. Ruoff*, assistant attorney general, on the brief and orally), for the State.

*Ted Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. After a jury trial, the defendant, Daniel Cochrane, was convicted of driving while intoxicated (DWI), fourth offense. *See* RSA 265:82, :82-b, II(c) (2004 & Supp. 2005). The defendant appeals an order of the Superior Court (*Mangones*, J.) denying his motion *in limine* to exclude the arresting police officer's testimony regarding the Horizontal Gaze Nystagmus (HGN) test. We affirm.

The record supports the following facts. On August 10, 2003, Officer Marc Beaudry of the Manchester Police Department observed the defendant driving the wrong way on a one-way street in Manchester. After stopping the defendant, Beaudry noticed that his eyes were glassy and

bloodshot and that there was an odor of an alcoholic beverage coming from the car. Beaudry asked the defendant to submit to four field sobriety tests, including the HGN test. Based upon his observations during the field sobriety tests, Beaudry arrested the defendant for DWI.

Approximately ten days before trial, the defendant filed a motion *in limine* to exclude Beaudry's testimony regarding his administration of the HGN test. The defendant asserted that Beaudry was required to testify as an expert witness in order to establish a proper foundation for its admissibility pursuant to New Hampshire Rule of Evidence 702 and *State v. Dahood*, 148 N.H. 723, 735 (2002). Because the State had not complied with the pretrial disclosure requirements in Superior Court Rule 98 (Discovery in Criminal Cases) and RSA 516:29-a (Supp. 2005) (Disclosure of Expert Witnesses), the defendant contended that Beaudry's testimony was not admissible at trial. The State countered that Beaudry's testimony regarding the HGN test was not expert testimony and, therefore, it was not required to comply with pretrial disclosure requirements pertaining to expert witnesses. The trial court ruled, in accordance with its interpretation of *Dahood*, that if the State laid the appropriate foundation encompassing "[Beaudry's] training and how [*sic*] whether or not the predicates of the test were met," Beaudry's testimony regarding the HGN test would be admissible.

On appeal, the defendant asserts that Beaudry's testimony regarding the administration and interpretation of the HGN test constituted expert scientific testimony. He interprets *Dahood* as requiring expert testimony because in that case we determined the admissibility of the HGN test under New Hampshire Rule of Evidence 702 and the *Daubert* test. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Baker Valley Lumber v. Ingersoll-Rand*, 148 N.H. 609 (2002) (adopting the *Daubert* test to determine the admissibility of scientific evidence).

Relying upon *State v. Arsenault*, 115 N.H. 109 (1975), and its progeny, however, the State argues that Beaudry's testimony was lay testimony based upon his observations of the defendant while the test was being administered. The State asserts this interpretation comports with *Dahood*.

Evidentiary rulings are within the sound discretion of the trial court. *State v. Fernandez*, 152 N.H. 233, 242 (2005). We review the trial court's ruling for an unsustainable exercise of discretion. *See State v. Lambert*, 147 N.H. 295, 296 (2001). "We will reverse the trial court only if the appealing party can demonstrate that the ruling was untenable or unreasonable and that the error prejudiced the party's case." *State v. Gonzalez*, 150 N.H. 74, 77 (2003) (quotation omitted).

We described the HGN test in detail in *Dahood*. *See Dahood*, 148 N.H. at 728-29. In summary, it is a standardized field sobriety test designed to

detect nystagmus, *i.e.*, an involuntary, rapid, back-and-forth jerking of the eyes. *Id.* at 728. The administering police officer positions a stimulus, such as a pen, penlight, or finger, approximately twelve to fifteen inches in front of the suspect's eyes and gradually moves the stimulus laterally towards the suspect's ear. *Id.* The officer observes the suspect's eyeballs to detect the following three signs, which could indicate intoxication: (1) the inability of the eye to smoothly track the stimulus; (2) the presence of nystagmus at the eye's maximum horizontal deviation; and (3) the point at which nystagmus, if present, begins as the stimulus is moved. *Id.* The officer tests each eye and gives the suspect a point for each sign observed; therefore, a total of six points is possible. *State v. O'Key*, 899 P.2d 663, 674 (Or. 1995).

In *Dahood*, we considered the admissibility of the HGN test as scientific evidence under New Hampshire Rule of Evidence 702 and *Daubert*. *Dahood*, 148 N.H. at 726. We concluded that the HGN test is based upon scientific principles that are reliable, and that HGN test results are admissible as a matter of law provided their proponent presents "a qualified witness who can testify about the subject." *Id.* at 735. Such evidence is admissible for the limited purpose of providing circumstantial evidence of intoxication. *Id.* at 730. Thus, HGN test results are a factor to be considered when determining whether a defendant is intoxicated and may not be introduced for the purpose of establishing a specific BAC level. *Id.* at 734.

In *Dahood*, consistent with a majority of jurisdictions, we recognized that "to establish a proper foundation, the State must put forth evidence that the police officer who administered the HGN test is trained in the procedure and that the test was properly administered at that time." *Id.* at 735. Once the State has established the requisite foundation regarding the police officer's training and administration of the HGN test, "a properly trained and qualified police officer may introduce the HGN test results at trial." *Id.* While *Dahood* addressed the admissibility of the HGN test, it did not address whether the testimony of the police officer introducing the HGN test results constitutes expert or lay testimony.

■ "Expert testimony involves matters of scientific, mechanical, professional or other like nature, which requires special study, experience, or observation not within the common knowledge of the general public." *Gonzalez*, 150 N.H. at 77 (quotations omitted); *see* N.H. R. Ev. 702. In contrast, "[l]ay testimony must be confined to personal observations which any lay person would be capable of making." *Gonzalez*, 150 N.H. at 77 (quotations omitted); *see* N.H. R. Ev. 701.

The theory underlying HGN testing is that "alcohol consumption causes nystagmus, and that a trained officer can detect such nystagmus." *Dahood*, 148 N.H. at 734. A police officer's testimony regarding his training, his administration and scoring of the HGN test, and the HGN test results as established by the National Highway Traffic Safety Administration (NHTSA) standards and guidelines does not require an understanding of the underlying scientific mechanisms explaining the phenomenon of nystagmus itself. All that is required is an understanding that alcohol consumption can cause nystagmus, which can be detected by a trained police officer through observing the defendant during the administration of an HGN test.

■ We do not dispute that the scientific and neurological mechanisms behind the effects of alcohol on the nervous system and the phenomenon of nystagmus are specialized and highly technical and, therefore, not within the common knowledge of the general public. Therefore, testimony regarding these mechanisms would qualify as expert testimony under Rule 702 and be subject to pretrial disclosure requirements applying to expert testimony. Nevertheless, so long as a trained police officer's testimony is limited to: (1) his or her training and experience in administering and scoring the HGN test based upon the NHTSA standards and guidelines; (2) the administration of the HGN test in a particular case; and (3) the results of the HGN test as established by the NHTSA standards and guidelines, we hold that it constitutes lay testimony not subject to pretrial disclosure requirements applicable to expert testimony. In reaching this conclusion, we are particularly persuaded by our previous determination establishing the reliability of the underlying theory, our ruling limiting the admissibility of evidence based upon this theory to circumstantial evidence of intoxication, and our requirements for laying a proper foundation. *Id.* at 734-35.

We are not persuaded by the defendant's assertion that the administration of the HGN test and a police officer's interpretation of the results are so subjective that expert testimony is required to assist the fact finder in understanding the evidence. The HGN test is a standardized test recommended by the NHTSA. *See id.* at 728. The administration of the test, while requiring some training, is relatively straightforward. Standards and guidelines controlling the HGN test are published by the NHTSA in a manual used to instruct police officers in the administration and evaluation of the test and its results. *Id.* at 732-33. The test results are based upon the administering police officer's observations of the presence or absence of a physical phenomenon—nystagmus. If present while the test was being administered, a layperson would be capable of observing:

(1) whether there was an involuntary, rapid, back-and-forth jerking of the suspect's eyes (nystagmus); (2) the onset of nystagmus, if present; and (3) the suspect's ability to track the stimulus with his or her eyes. Therefore, based upon our holding that the HGN test is reliable, we find little distinction between a police officer's observations in this instance and those made by a police officer during the administration of other field sobriety tests. *See id.* at 732.

In *Dahood*, we acknowledged that "[c]oncerns regarding false positive readings would apply equally to other field sobriety tests administered in the field, which are regularly admitted into evidence," and concluded that these factors go to the weight of the HGN evidence rather than its admissibility because they "can be explored through cross-examination or expert testimony offered at trial." *Dahood*, 148 N.H. at 732. Similarly, we recognized that concerns regarding a police officer's training and experience administering the test are appropriate subjects for cross-examination and, therefore, go to the weight of the evidence rather than its admissibility. *Id.* at 733. Thus, we are not persuaded by the defendant's assertion that potential subjectivity in a police officer's administration and interpretation of his observations regarding the HGN test requires a finding that such testimony is expert testimony.

■ Accordingly, we hold that a police officer's testimony regarding his or her: (1) training and experience in administering and scoring HGN tests; (2) administration of a particular HGN test; and (3) interpretation of the resulting HGN test score, constitutes lay testimony under New Hampshire Rule of Evidence 701 provided that the testimony is based upon the officer's observations, made in accordance with established NHTSA standards and guidelines, and does not encompass highly technical or specialized scientific information pertaining to mechanisms behind the nystagmus phenomenon itself.

This ruling is consistent with our position regarding the admissibility of evidence obtained through the use of a radar gun, which is analyzed as scientific evidence under Rule 702. *State v. Ahern*, 122 N.H. 744, 745 (1982). Radar evidence is admissible provided "there is proof that the test device was operating accurately and that the test was performed by qualified individuals." *Id.*; *see State v. Caswell*, 146 N.H. 243, 248 (2001). In practice, provided the proper foundation is established, the testifying officer's testimony is not expert testimony despite the fact that the technical mechanisms underlying how the radar gun works is not common knowledge. *See Caswell*, 146 N.H. at 248.

Both the results obtained from a radar gun and HGN test scores are obtained through personal observations made by a trained police officer.

As such, the observations are "rationally based on the perception of the witness" and are "helpful to a clear understanding of the testimony or the determination of a fact in issue." N.H. R. Ev. 701.

Accordingly, we conclude that the trial court properly denied the defendant's motion *in limine*.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.