**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0380, <u>State of New Hampshire v. Charles Dreibelbis</u>, the court on July 14, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Charles Dreibelbis, appeals his conviction for driving while under the influence of intoxicating liquor or drugs, <u>see</u> RSA 265-A:2, I (2014), arguing that the Circuit Court (<u>Ashley</u>, J.) erred in finding him guilty because: (1) the evidence was insufficient to prove intoxication; and (2) the results of the Horizontal Gaze Nystagmus (HGN) test should not have been admitted.

The defendant first argues that the evidence was insufficient to support the conviction. "When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>State v. Zubhuza</u>, 166 N.H. 125, 128 (2014) (quotation omitted). "We consider all the evidence and all reasonable inferences therefrom in the light most favorable to the State." <u>Id</u>. (quotation omitted). "The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt." <u>Id</u>. (quotation omitted).

RSA 265-A:2, I(a) provides, in pertinent part: "No person shall drive . . . a vehicle upon any way . . . [w]hile such person is under the influence of intoxicating liquor or . . . drugs." To establish that the defendant was under the influence of intoxicating liquor or drugs, the State needed to prove only that he was impaired to any degree. <u>State v. MacDonald</u>, 156 N.H. 803, 804 (2008).

The State's first witness, a convenience store clerk, testified that on October 13, 2012, he was working the overnight shift when, at approximately 4:00 a.m., he observed the defendant drive his pickup truck into the parking lot, with the driver's side front tire "blown out," and park diagonally across three parking spaces. The clerk testified that when the defendant entered the store, he was not speaking coherently. The defendant told the clerk that "he wasn't with it," and asked the clerk to "bear with him." The defendant then handed the clerk three coupons for different stores, including one for Dunkin Donuts and one for Hannaford's, and asked him to obtain these items for him.

The defendant then walked aimlessly around the store for some time, "grabbing on the shelves to hold himself up." He then returned to the counter and presented the same three coupons to the clerk as winning lottery tickets. The clerk was concerned that if the defendant resumed driving, he would get into an accident and hurt someone, so he called the police.

Sergeant Jeremy Aucoin of the Rochester Police Department testified that he was a patrol officer on the midnight shift on October 13, 2012, when he responded to the clerk's report. The officer testified that upon arrival, he observed the defendant's pickup parked diagonally in the fire lane of the convenience store parking lot, with the driver's side front tire dented, scratched, torn, and flat. The passenger side front tire was partially on the curb. The officer observed the defendant repeatedly attempt to put his key into the door lock of his pickup. After each unsuccessful attempt, "[h]e would stagger to the side." The defendant told the officer that a friend was driving the vehicle and had dropped him off at the store. He explained that he was planning to "sleep inside the vehicle and wait until somebody came to pick it up." The officer noticed that the defendant had bloodshot and glassy eyes, slurred speech, and a "thick tongue." The officer could smell the odor of an intoxicating beverage emitting from the defendant. When the officer asked the defendant about the damage to the front tire, the defendant responded that he was unaware of the damage.

The officer asked the defendant if he had had anything to drink that night, and the defendant told the officer that he had had three drinks: a vodka and cranberry juice; a vodka and Mountain Dew; and a Limoncello. The officer asked the defendant if he was on any medications, and the defendant responded that he was taking Percocet, Flexeril, Adderall, Naproxen, Seroquel, Xanax, Wellbutrin, and Synthroid. The officer asked the defendant if he felt intoxicated, and he responded that he did not feel impaired by alcohol, but that he did feel "a little groggy from the medication." The defendant then stated that on a scale of one to ten, with ten being the most intoxicated he had ever been, he felt his current state of intoxication would score "between a four and a five." The defendant agreed to perform field sobriety tests, which were conducted inside the store. The officer testified that, based upon his observations of the defendant, his admission to the consumption of alcohol and ingestion of numerous medications, and his performance on the HGN test, he arrested the defendant for driving while intoxicated. The officer transported the defendant to the police station, where he administered a breath test, which showed that the defendant had a blood alcohol concentration of 0.04.

The defendant argues that based upon the results of the breath test, he was entitled to a presumption of no impairment, and that the evidence was insufficient to overcome the presumption. We will not review any issue that the defendant did not raise in the trial court. State v. Blackmer, 149 N.H. 47, 48 (2003). The purpose of this rule is to provide the trial court with the

2

opportunity to rule on issues and to correct errors before they are presented to the appellate court. Id. RSA 265-A:11, I (2014) provides, in relevant part, that "[e]vidence that there was, at the time alleged, an alcohol concentration of 0.03 or less is prima facie evidence that the defendant was not under the influence of intoxicating liquor." RSA 265-A:11, I, also provides that "[e]vidence that there was, at the time alleged, an alcohol concentration of more than 0.03 and less than 0.08 is relevant evidence but is not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor." Although the defendant's breath test showed a blood alcohol concentration of 0.04, he argues that, given the breathalyzer's margin of error, the trial court was required to find that his alcohol concentration was no more than 0.03, prima facie evidence that he was not under the influence of intoxicating liquor. See RSA 265-A:11, I. However, at trial, defense counsel stated, "Judge, it's absolutely certain you've got a .04," and "the presumption is that he's not impaired due to alcohol with a .04." Because we conclude that the record fails to show that the defendant raised this issue in the trial court regarding the relationship between the breathalyzer's margin of error and the presumptions under RSA 265-A:11, I, we decline to address it. See Blackmer, 149 N.H. at 48.

The defendant also argues that the State "effectively precluded the trial court from considering impairment by drugs or the combination of drugs and alcohol when it decided not to pursue those theories and to decline to present test results." However, the record shows that the State decided not to introduce laboratory test results only because of the difficulty of scheduling the analysts to appear for trial. The record does not support the defendant's assertion that the State "essentially stipulated that it was basing its case on impairment due to alcohol" alone. According to Sergeant Aucoin, the defendant admitted that he was taking Percocet, Flexeril, Adderall, Naproxen, Seroquel, Xanax, Wellbutrin, and Synthroid, and that he was feeling "a little groggy from the medication." The trial court could properly consider this evidence to support a finding that drugs contributed to the defendant's impairment. See MacDonald, 156 N.H. at 804.

The defendant also argues that this court should reconsider its holding in State v. Cochrane, 153 N.H. 420, 424 (2006), that expert testimony is not required to establish a proper foundation for the admission of HGN test results. Although the defendant asserts that that our holding is "illogical, a legal non sequitur," he does not provide developed legal argument in support of his position in his opening brief, see Blackmer, 149 N.H. at 49 (noting that we confine our review to only those issues that the defendant has fully briefed), nor does he address the factors that we consider in determining whether to overrule our precedents, see State v. Quintero, 162 N.H. 526, 532-33 (2011) (listing factors). We note that the defendant does develop this argument in his reply brief. Assuming, without deciding, that it was proper to do so, but see Panas v. Harakis & K-Mart Corp., 129 N.H. 591, 617-18 (1987) (court will not

3

address issues raised for the first time on appeal in a reply brief), he does not address the Quintero factors. Accordingly, we decline to address this issue.

The defendant also argues that the trial court erred in admitting the results of the HGN test because, he asserts, Sergeant Aucoin was not properly trained in the administration of the test, and he did not administer the test properly. Evidentiary rulings are within the sound discretion of the trial court. Cochrane, 153 N.H. at 421. We review the trial court's ruling for an unsustainable exercise of discretion. Id. We will reverse the trial court's decision only if the appealing party can demonstrate that the ruling was untenable or unreasonable to the prejudice of his case. Id. To establish a proper foundation for the admission of HGN test results, the State must put forth evidence that the police officer who administered the HGN test is trained in the procedure and that the test was properly administered. State v. Dahood, 148 N.H. 723, 735 (2002). Once the State has established the requisite foundation regarding the police officer's training and administration of the HGN test, a properly trained and qualified police officer may introduce the test results at trial. Cochrane, 153 N.H. at 422.

Sergeant Aucoin testified that he was certified to perform field sobriety tests, including the HGN test. He correctly described how to perform the test and correctly identified the six clues of impairment, three for each eye: lack of smooth pursuit; onset of nystagmus prior to forty-five degrees; and distinct and sustained nystagmus at maximum deviation. The defendant does not identify any specific deficiency in the officer's training or any specific error in his administration of the test, other than to assert that Sergeant Aucoin erroneously "award[ed] a point" when the defendant fell into the candy rack during the test. Sergeant Aucoin testified that the defendant showed all six of the standard clues of impairment on the HGN test: lack of smooth pursuit; onset of nystagmus prior to forty-five degrees; and distinct and sustained nystagmus at maximum deviation. Based upon this record, we cannot conclude that the trial court unsustainably exercised its discretion in admitting the HGN test results or the officer's testimony that he considered the defendant's fall during the test to be an additional sign of impairment. See Cochrane, 153 N.H. at 421.

After the State rested and the trial court denied the defendant's motion to dismiss, the defendant testified in his defense. The defendant is a physician and the medical director of seven outpatient addiction treatment clinics. He denied being intoxicated on the night of his arrest. Although he is not diabetic, he testified that he was having an episode of low blood sugar on October 13, 2012, and that his behavior prior to his arrest can be explained by the symptoms of his hypoglycemia, narcolepsy, and hypopituitarism. The defendant admitted that he had taken his normal doses of Adderall, Wellbutrin, Synthroid, Lasix, and Prednisone prior to the arrest, but denied taking any

4

other medications. He admitted having consumed one drink, a glass of wine after dinner, but denied having any vodka drinks or other alcoholic beverages.

Although the defendant offered a competing explanation for his behavior, it is the fact-finder who "observes the witnesses, judges their credibility and hears their testimony, accepting or rejecting it in whole or in part." State v. Gubitosi, 152 N.H. 673, 682 (2005) (quotation omitted). We will uphold the trial court's credibility determinations unless no rational trier of fact could have reached the same conclusion. State v. Hodgdon, 143 N.H. 399, 404 (1999). Based upon this record, we cannot conclude that the trial court was compelled to accept the defendant's testimony. See id. Based upon this record, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant was impaired when driving. See MacDonald, 156 N.H. at 804.

Finally, we note that the defendant argues that because "other appellants similarly situated are afforded oral argument," denying him oral argument in this case violates his rights to "due process, production of all proofs favorable, effective assistance of counsel and equal protection, as guaranteed him by Part I, Article 15 of the New Hampshire Constitution, as well as the 5th, 6th and 14th Amendments to the United States Constitution." Because the defendant provides no developed argument or legal authority in support of his position, we decline to address this issue. See State v. Durgin, 165 N.H. 725, 731 (2013) ("off-hand invocations" of constitutional rights supported by neither argument nor authority warrant no extended consideration).

Affirmed.

Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

5