**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2018-0458, <u>State of New Hampshire v. Philip Brown</u>, the court on May 16, 2019, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Philip Brown, appeals his conviction, following a bench trial in the Circuit Court (<u>Vetanze</u>, J.), on a charge of driving under the influence of intoxicating liquor (DUI). <u>See</u> RSA 265-A:2 (2014). We construe the defendant's brief to argue that: (1) the trial court erred by allowing the arresting State Trooper to testify concerning the defendant's performance on the horizontal gaze nystagmus (HGN) field sobriety test; and (2) the evidence was insufficient to establish that the defendant was impaired.

We first address whether the trial court erred by allowing the trooper's testimony concerning the defendant's performance on the HGN test into evidence. At trial, the defendant argued that the testimony was inadmissible because the trooper was not an expert qualified to testify as to "technical conclusions" concerning the HGN test. On appeal, he argues that the record "is devoid of any factual support for the" trooper's conclusions with respect to his performance on the HGN test, and that the State failed to lay a proper foundation for the trooper's testimony under New Hampshire Rule of Evidence 701. We assume, without deciding, that the defendant's challenges at trial to the trooper's lack of expert qualifications preserved his arguments on appeal regarding whether the State established a foundation for the trooper's lay opinion testimony. <u>But</u> <u>see</u> <u>State v. Mouser</u>, 168 N.H. 19, 26-28 (2015).

We review the trial court's evidentiary rulings for unsustainable exercises of discretion. <u>State v. Fiske</u>, 170 N.H. 279, 286 (2017). Under this standard, the defendant bears the burden to demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. <u>Id</u>. We examine the record to determine whether it establishes an objective basis sufficient to sustain the trial court's discretionary decision. <u>Id</u>.

We have held that the HGN test, which is designed to detect "nystagmus," that is, the "involuntary, rapid, back-and-forth jerking of the eyes," <u>State v. Cochrane</u>, 153 N.H. 420, 422 (2006), is, as a matter of law, scientifically-reliable, and that HGN test results may be admitted as circumstantial proof of intoxication through the testimony of the police officer

who administered the test so long as the State establishes that the officer was trained in administering the test and properly administered it, State v. Dahood, 148 N.H. 723, 734-35 (2002).  We have also held that a police officer's testimony concerning the officer's training and experience in administering and scoring the HGN test, the administration of the HGN test in a particular case, and the interpretation of the HGN test results amounts to lay opinion testimony for purposes of New Hampshire Rule of Evidence 701.  Cochrane, 153 N.H. at 423.  Once the State establishes a foundation for the officer's testimony regarding HGN test results, concerns over the officer's training and experience in administering the test are matters that generally go to the weight of the evidence and not its admissibility.  Id. at 424.

In this case, the trooper testified that he had received special training in DUI interdiction at the New Hampshire Police Academy, and that as part of his training, he received specific instruction on how to administer the HGN test.  The trooper's police academy training included a presentation and demonstration of how to administer the HGN test, as well as practice administration of the test on colleagues.  The trooper further testified that he had performed field sobriety testing on "countless" individuals during his twelve years as a police officer, including ten of those years when he had worked within a college environment and had encountered "hundreds, if not thousands" of intoxicated persons.  The trooper testified that he has read the National Highway Traffic Safety Administration manual on field sobriety testing, and that he was aware, from the manual, that alcohol consumption can cause nystagmus.  See Dahood, 148 N.H. at 729 (noting well-documented nature of scientific finding that alcohol causes pronounced nystagmus).

With respect to his administration of the HGN test, the trooper testified that he first asked the defendant whether he had consumed any alcohol, medication or illicit drugs, whether he wore contacts or glasses, and whether he had any physical impairment that might affect field sobriety testing.  The trooper then asked the defendant to touch the tip of the pen that he would use as a stimulus with his index finger, and checked the defendant's eyes for resting nystagmus, for equal pupil size, and to ensure that both eyes tracked equally.  In administering the test, the trooper testified that he moved the pen slowly from in front of the defendant's nose toward the side, making a total of six "passes" for each eye, or twelve total passes.  With each pass of the pen, the trooper testified that he was looking for certain "clues" in each eye.  Specifically, the trooper looked for the following clues: (1) the onset of nystagmus, which he described as "involuntary jerking of the eyes," at less than a 45-degree angle, using the defendant's shoulders as a reference point to determine whether nystagmus began prior to 45 degrees; (2) the lack of smooth pursuit of each eye, which he described as "windshield wipers that kind of stick as they're flutter[ing] up," and as "the jerking of the eyes as the pen or the stimulus is gradually going over to the right or left side"; and (3) sustained nystagmus at maximum deviation, which he described as "moving the stimulus

to the far right so that there's no white visible in the corner of the eye and confirming if there is a nystagmus at that point." See generally id. at 728-29 (describing HGN test and three physical manifestations that occur during its administration if the subject person is under the influence of alcohol).

Thus, the trooper testified that he was looking for a total of six separate clues, or the presence of each one of the above three clues in each of the defendant's eyes, when he administered the test, and that he used two separate passes of the stimulus to check for each one of the six clues. According to the trooper, the presence of four of the clues would have constituted a failing score on the HGN test. With respect to the defendant, the trooper testified that he observed all six clues during his administration of the test and, thus, that the defendant had failed it.

We conclude that the trial court was well within its discretion to allow the trooper's testimony concerning the defendant's performance on the HGN test, and that it could properly rely upon such testimony as evidence of the defendant's intoxication. See id. at 734-35. The trooper's testimony establishes both that he has training and experience in administering the HGN test, and that he properly administered it to observe the three recognized signs of impairment. See id. at 728-29. Contrary to the defendant's argument, the trooper's testimony consisted of more than simple conclusions without factual support. To the extent that the defendant criticizes the trooper for not having had more recent HGN training and for not having utilized fourteen passes of the stimulus or checked for vertical nystagmus, and to the extent that he claims that the trooper "seemed unfamiliar with the manual" on field sobriety testing, those challenges address matters that went to the weight, as opposed to the admissibility, of the trooper's testimony. Cochrane, 153 N.H. at 424; Dahood, 148 N.H. at 732-33. Upon this record, we cannot say that the trial court's decision to allow the trooper to testify concerning the defendant's performance on the HGN test was clearly untenable or unreasonable to the prejudice of his case. Fiske, 170 N.H. at 286.

We next address whether the evidence was sufficient to establish the defendant's impairment. It is the defendant's burden to demonstrate that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Kelley, 159 N.H. 449, 454-55 (2009). In reviewing the evidence, we examine each item of evidence within the context of all of the evidence, and not in isolation. Id. To establish that the defendant was "under the influence of intoxicating liquor" for purposes of RSA 265-A:2, I, the State was required to prove only that the defendant was "impaired to any degree." Kelley, 159 N.H. at 452.

In this case, a third party witness testified that prior to the defendant's stop, she traveled behind him for 25 to 30 miles, and observed that he was "[s]werving into the – over the – over the shoulder, into the dirt, back on,

3

crossing the center line several times and just not – not driving between the lines." As a result of the defendant's unsafe operation of his vehicle, the witness called 911, and continued to follow behind him until the trooper pulled him over. According to the witness, the defendant was "constant[ly] all over the road" after the parties entered Interstate Route 93, and at one point, he almost side-swiped another vehicle that was attempting to pass him.

When the trooper arrived, he observed the defendant cross from the far-right lane of Route 93 into the middle of the southbound lanes and then drive his vehicle such that the two driver-side wheels were in the left lane, the two passenger-side wheels were in the right lane, and half of the vehicle was in each lane. According to the trooper, the weather conditions were clear. When the trooper activated his blue lights, the defendant tapped his brakes and pulled into the right lane, but then continued traveling without pulling over for "an unusual amount of time, more so than it would take a normal person . . . to pull over." When the trooper initially approached the defendant's driver-side window, he immediately noticed an odor of alcohol coming from inside the vehicle, that the defendant had "bloodshot, glassy eyes," and that the groin area of the defendant's shorts was wet. During a post-arrest inventory search of the vehicle, the trooper found a partially-consumed open beer can in a cooler located on the passenger-side seat. The defendant admitted that he had consumed four beers earlier that day, and told the trooper that, on a scale of one to ten, with one being "completely sober," his intoxication level was at two.

As noted above, the defendant's performance on the HGN test indicated that he was impaired. The defendant was subsequently unable to complete the "walk and turn" test, falling out of the "instructional stance" multiple times before the test even began, and staggering his feet in a manner typical of someone widening his or her base so as to gain balance. When the defendant attempted to perform the "one-leg stand" test, which required him to stand on one foot for thirty seconds with the other foot pointing forward six inches above the ground and his arms by his side, the defendant used his arm for balance, swayed while balancing on one foot, and placed his foot on the ground at six seconds, eight seconds, and nine seconds before stopping the test. The defendant failed the test, exhibiting three of four clues of intoxication.

Finally, despite the fact that the defendant claimed that he had consumed his last beer six hours prior to the stop, he refused to submit to a breath test. We note that the defendant testified that he was advised that his refusal to submit to the test could be admissible in court. See RSA 265-A:10 (2014); State v. Parker, 142 N.H. 319, 322-24 (1997) (upholding State's closing argument and trial court's jury instruction stating that jury could consider refusal to take alcohol concentration test as evidence of intoxication).

Viewing the evidence in the light most favorable to the State, we conclude that the trial court reasonably could have found, beyond a reasonable doubt,

4

that the defendant was "under the influence of intoxicating liquor" for purposes of RSA 265-A:2, I.  See State v. Hull, 149 N.H. 706, 712 (2003) (finding that evidence that defendant smelled of alcohol, had slurred speech and blood shot eyes, swayed, performed poorly on field sobriety tests, and refused to take a blood alcohol test was sufficient to establish intoxication).

To the extent the defendant argues that the State improperly failed to produce the trooper's field notebook, the defendant neither raised the argument at trial nor sufficiently developed it in his brief.  State v. Blackmer, 149 N.H. 47, 48-49 (2003).

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**