NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2020-0025

THE STATE OF NEW HAMPSHIRE

v.

MARK BOULTON

Argued: April 14, 2021
Opinion Issued: September 30, 2021

Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, senior assistant attorney general, on the brief and orally), for the State.

Rudolph Friedmann, LLP, of Boston, Massachusetts (William A. Korman on the brief and orally), for the defendant.

BASSETT, J. The defendant, Mark Boulton, appeals convictions, following a jury trial, on four counts of aggravated felonious sexual assault, see RSA 632-A:2, IV (2016), and one count of misdemeanor sexual assault, see RSA 632-A:4, I(b) (Supp. 2020). He argues that the Superior Court (Ignatius, J.) erred by: (1) denying his request to enter portions of the transcript of his interview with police into the record; and (2) allowing a witness for the State to offer expert testimony while testifying as a lay witness. We affirm.

The following facts are undisputed or supported by the record. In 2016, a 15-year-old child reported that she had been sexually assaulted by the

defendant. The Moultonborough Police Department investigated the allegations. A detective in the department interviewed the defendant, and the department prepared a transcript of the interview.

At trial, the State called the detective as a witness. On direct examination, the detective testified regarding his interview with the defendant, but the State did not offer the transcript of the interview into evidence, nor did it use the transcript to refresh the detective's memory. The defendant objected to the detective's testimony, arguing that he was mischaracterizing the interview. The trial court overruled the objection, observing that the defendant was free to cross-examine the detective if he believed that the detective was mischaracterizing the interview.

On cross-examination, the defendant sought to have the detective read portions of the interview transcript into the record. The State objected. The defendant responded that he was entitled to read portions of the transcript into the record because the State had provided an incomplete and misleading account of the interview. See N.H. R. Ev. 106.

The trial court sustained the objection. The court ruled that, because the State had only questioned the detective regarding the interview, without introducing any portion of the transcript, the defendant was not entitled to introduce the transcript in order to correct any misleading impression. Rather, the court stated, the defendant could use the transcript to refresh the detective's memory or impeach specific answers. At the close of the State's case, the defendant asked the court to reconsider its prior ruling. The defendant requested that the court "allow the defense to enter into evidence the entirety of [the defendant's] statements" from the interview in regard to certain topics that the detective had testified to. The court denied the motion.

At trial, the State also called as a witness the Moultonborough police officer who had led the department's investigation in the case. On direct examination, the State asked the officer to explain the role of a Child Advocacy Center in a criminal investigation when a child is interviewed. The defendant objected, arguing that, because the officer was not testifying as an expert, she should not be allowed to testify as to how she had been "trained . . . to speak with children." The trial court overruled the objection, explaining that the officer could answer the question because it would provide the jury with background information about how a child sexual assault investigation generally proceeds. Shortly thereafter, the State asked the officer how many child sexual abuse investigations she had led. The defendant again objected, arguing that that information was irrelevant. The court overruled the objection, stating that the answer would provide appropriate background information regarding the officer's training and experience.

2

During cross-examination, the defendant asked the officer whether it is standard practice when conducting an investigation to interview witnesses as soon as possible after an event. The officer responded that witnesses sometimes need time to "process" an event before discussing it. On redirect examination, the officer was asked to expand on her answer:

Q  You talked a little bit, at the beginning of that cross [-examination], about giving people time to process. Counsel [for the defendant] had asked you questions about immediately interviewing witnesses and alleged victims. And you started to talk a little bit about processing. What do you mean by that?

A  When a traumatic event occurs -- and we know this, you know, essentially, from our training and how to approach, you know, if we're at a --

The defendant objected, arguing that the officer was "not testifying as an expert, so I don't think she gets to talk about processing, internal mind, all of that stuff." The trial court overruled the defendant's objection. This exchange between the State's counsel and the officer followed:

Q  Counsel [for the defendant] had asked you questions about how it's -- the protocol or the procedure is to interview people right away. And your response, if I understand you correctly -- correct me if I'm wrong -- was that not always and that sometimes people need to process. Was that your answer?

A  Yeah, many --

Q  Can you just --

A  -- many times they do, yes.

Q  Right. Explain that.

A  Yeah. I -- I was saying, before, that, you know, a police-involved shooting, for example, we would never interview the officer involved or officers, you know, right site on scene, you know, three minutes after it happened: what did you see; what did you -- I mean, often, they'll take a quick statement from them. By that, I mean, like, how many shots do you think you fired, and go from there, go home, rest. They seize the firearm.

My training with working with child advocacy centers and forensic interviewing, you know, they alway[s] -- we just constantly are saying, disclosure is a process. And a traumatic event, as we

know, can -- you know, for anyone, just a general, you know, like, you go through a tough time, you lose a parent or something, no matter what age you are, and you become depressed, that's a reaction to that. And it's hard to process information on the event and whatnot.

And it does take time, and you remember little things. And that's why it's important and we often do go back and talk to people, sometimes informally. Like I said, it's not, you know, always, like, oh, push play, you know, record. For victims and suspects, yes, we -- there are certain things in place. But other than that, no.

The jury convicted the defendant, and this appeal followed.

On appeal, the defendant argues that the trial court erred when it ruled that he was not entitled to enter portions of the transcript of his interview with the detective into the record. He also argues that the trial court erred when it allowed the officer, who was testifying as a lay witness, to provide expert testimony regarding forensic interviewing.

"The trial court has broad discretion to determine the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion." State v. Plantamuro, 171 N.H. 253, 255 (2018). "When we determine whether a trial court has sustainably exercised its discretion, we are really deciding whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." State v. Gonzalez, 170 N.H. 398, 407 (2017) (quotation omitted). "Our task is not to determine whether we would have found differently, but is only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." Plantamuro, 171 N.H. at 255. To show that the court's ruling is not sustainable, the defendant must demonstrate that the decision "was clearly untenable or unreasonable to the prejudice of his case." State v. Lambert, 147 N.H. 295, 296 (2001) (quotation omitted).

We first address the defendant's argument that the trial court erred when it ruled that he was not entitled to enter portions of the interview transcript into the record. The defendant argues that the State created a misleading impression when, through the detective, it elicited testimony as to selected portions of the defendant's statements during the interview. The defendant contends that the jury was left with the impression that his responses were more inculpatory than they actually were. He argues that, pursuant to Rule 106 of the New Hampshire Rules of Evidence, he had a right to introduce excerpts from the transcript into the record to correct the misleading impression created by the detective's testimony. We disagree.

4

Rule 106, Remainder of or Related Writings or Recorded Statements, provides as follows:

(a) If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at the time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.

(b) A party has a right to introduce the remainder of an unrecorded statement or conversation that his or her opponent introduced so far as it relates:

(1) to the same subject matter; and

(2) tends to explain or shed light on the meaning of the part already received.

N.H. R. Ev. 106. Rule 106 codifies New Hampshire's common law doctrine of completeness, which provides that a party "has the right to introduce the remainder of a writing, statement, correspondence, former testimony or conversation that his or her opponent introduced so far as it relates to the same subject matter and hence tends to explain or shed light on the meaning of the part already received." State v. Lopez, 156 N.H. 416, 421 (2007) (quotation omitted); see State v. Mitchell, 166 N.H. 288, 293 (2014). The doctrine "exists to prevent one party from gaining an advantage by misleading the jury." Lopez, 156 N.H. at 421 (quotation omitted). The goal of the doctrine is "to correct misleading impressions by omission." Mitchell, 166 N.H. at 294. "The trial court has discretion under Rule 106 to determine whether fairness requires admission of remaining parts [of a conversation] or related documents." State v. Botelho, 165 N.H. 751, 760 (2013) (quotations omitted).

Although the defendant argues that portions of the transcript should have been admitted into evidence under Rule 106, he does not specify whether he advances this argument under paragraph (a) or (b). We will analyze his argument under both paragraphs.

By its express terms, paragraph (a) applies only if a party "introduces all or part of a writing or recorded statement." N.H. R. Ev. 106(a). We note that this language is identical to the language in Federal Rule of Evidence 106. See Fed. R. Evid. 106. Here, on direct examination, the detective testified based on his memory of the interview, and the State did not refer to the interview transcript when it questioned him. We agree with federal courts applying Federal Rule of Evidence 106 that, under such circumstances, a party has not introduced a "writing or recorded statement" — i.e., the transcript — and therefore the opposing party does not have a right to introduce the transcript in

5

order to correct any misleading impression. See United States v. Garcia, 530 F.3d 348, 350-54 (5th Cir. 2008) (ruling that the defendant could not introduce the transcript of his interview with a government agent in response to the agent's testimony, when the agent only "testif[ied] as to his memory of the conversation," and the jury "did not hear or read quotations" from the transcript); see also United States v. Pendas-Martinez, 845 F.2d 938, 939, 943-45 (11th Cir. 1988) (ruling that, although defense counsel inadvertently read an isolated line from a report during cross-examination, the government did not have the right to introduce the entire report in response because defense counsel's use of the report was not "so extensive as to be tantamount to introduction of the report into evidence"). Here, because the State neither used nor referred to the interview transcript when it questioned the detective, and it did not introduce the transcript into evidence, we conclude that the trial court sustainably exercised its discretion under paragraph (a). See N.H. R. Ev. 106(a).

To the extent that the defendant also argues that the interview was an unrecorded statement or conversation under paragraph (b) and that the trial court erred when it prevented him from introducing the remainder of that conversation, we disagree. By eliciting testimony regarding the detective's conversation with the defendant, the State arguably introduced part of an "unrecorded statement or conversation." N.H. R. Ev. 106(b). However, the trial court did not prevent the defendant from "introduc[ing] the remainder" of the conversation. Id. Here, the trial court did not prevent the defendant from eliciting testimony regarding other portions of the interview through cross-examination. Rather, he was barred from introducing portions of the transcript. Nevertheless, consistent with Rule 106(b), the defendant had the opportunity to cross-examine the detective regarding the entire interview, and to use the transcript to refresh the detective's memory and impeach specific answers, thereby correcting any misleading impression that may have arisen as a result of the detective's testimony on direct. See N.H. R. Ev. 106 Reporter's Notes (explaining that an adverse party may "present related parts of conversations by way of cross-examination"). As the State observes, the trial court did not prevent the defendant from providing further context to the interview; it merely prohibited him from introducing the transcript to do so. Because the defendant had the opportunity to cross-examine the detective and to use the interview transcript to correct any misleading impression, we conclude that the trial court sustainably exercised its discretion when it ruled that the defendant did not have the right to introduce parts of the transcript into the record. See N.H. R. Ev. 106(b).

We now turn to the defendant's second argument: that the trial court erred when it allowed the officer, who was testifying as a lay witness, to provide expert testimony. The defendant asserts that the court allowed the officer to provide improper expert testimony on three occasions: when the officer explained the role of a Child Advocacy Center in an investigation; described

6

how many child sexual abuse investigations she had led; and testified that witnesses sometimes need time to "process" traumatic events before being interviewed, and that based on her training "working with child advocacy centers and forensic interviewing, . . . we just constantly are saying, disclosure is a process." Although the defendant argues that all of this testimony is expert testimony, he focuses his argument almost exclusively on the officer's testimony as to the third topic. Accordingly, we will also focus our analysis on that testimony.

The defendant argues that this testimony constitutes expert testimony because it is based on the officer's specialized training and experience, and its purpose was "to explain why [the victim] may have taken time to disclose what had happened to her, as well as why there may be inconsistencies in the retelling of the allegations of sexual assault." The State counters that the testimony is not expert testimony because the average juror is familiar with the concept of "processing" a startling or traumatic event, and the officer's testimony did not, in fact, explain why the victim may have delayed reporting the assaults or made inconsistent statements. We agree with the State.

Rule 701 of the New Hampshire Rules of Evidence provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

N.H. R. Ev. 701. Expert testimony involves "matters of scientific, mechanical, professional or other like nature, which requires special study, experience, or observation not within the common knowledge of the general public." State v. DePaula, 170 N.H. 139, 153 (2017) (quotation omitted).

First, we disagree with the defendant's argument that, merely because the officer's testimony is based on her training and experience, we should deem her testimony to be expert testimony. Testimony based upon a witness's personal knowledge gained through employment is admissible as lay testimony, so long as the witness does not testify to scientific or technical processes which an average lay person would not be able to comprehend. See id. at 154-55 (concluding that custodians of cell phone records could provide lay testimony regarding the range of cell towers based upon personal knowledge gained through their employment). "[I]ndividuals can present limited lay testimony

7

regarding matters which, if discussed in detail, would require expert testimony." Id. at 154. For example, a police officer may testify as a lay witness regarding his or her administration of a field sobriety test measuring rapid eye movement, notwithstanding the fact that the average lay person has never administered such a test, and despite the fact that testimony explaining the underlying medical reasons for the eye movement would be expert testimony. See State v. Cochrane, 153 N.H. 420, 421-24 (2006). Similarly, an officer may testify as a lay witness regarding his or her use of a radar gun to measure a vehicle's speed, even though testimony explaining the underlying mechanisms of a radar gun would be expert testimony because those mechanisms are "not common knowledge." Id. at 424 (citing State v. Caswell, 146 N.H. 243, 248 (2001)).

These cases demonstrate that a witness's testimony is not expert testimony simply because it is based upon personal knowledge that the witness would not have had absent his or her employment. See DePaula, 170 N.H. at 154-55; Cochrane, 153 N.H. at 423-24. Personal observations made through a witness's employment may well be observations that any lay person would "be capable of" making, at least with "some training." Cochrane, 153 N.H. at 423. Even if the witness's testimony incorporates some degree of professional knowledge, what is material is whether the testimony encompasses "highly technical or specialized . . . information," id. at 424, or simply "elementary concepts" that an average juror would be able to understand, DePaula, 170 N.H. at 155.[1]

Here, the officer was asked to explain why, under certain circumstances, it is preferable to allow a witness to "process" an event before interviewing the witness. The officer gave a lengthy response which, taken as a whole, conveyed that traumatic events can be difficult to recall and discuss, and that it is sometimes easier for a witness to do so after the witness has had some time to reflect. The officer's reference to her experience with disclosure by child victims was offered in passing as one example of this point. The officer also gave the example of losing a parent, which unquestionably is an experience within the common knowledge of the general public. We have little trouble

_____

[1] We note that we observed in State v. Gonzalez, 150 N.H. 74, 77-80 (2003), that testimony by a social worker and a police officer during a sexual assault trial about their observations and conclusions made during their employment regarding the frequency of victim denials and delayed disclosures respectively was improper expert testimony from lay witnesses because their observations "required specialized training, experience and skill not within the ken of the ordinary person," id. at 79 (quotation omitted); see also State v. Tierney, 150 N.H. 339, 345, 347-48 (2003) (relying on Gonzalez in concluding that the trial court erred in allowing certain expert testimony but reversing defendant's sexual assault convictions on other grounds). However, as we explain below, Gonzalez does not control the outcome in this case because the testimony here was of a different nature, was offered for a distinct purpose, and was elicited in a different procedural context than that in Gonzalez.

concluding that the average juror is familiar with the notion that a person might be better able to remember and discuss certain traumatic events after some time has passed since the event occurred. On its face, the officer's testimony is not "highly technical or specialized" and therefore is not expert testimony. Cochrane, 153 N.H. at 424. For similar reasons, we are not persuaded by the defendant's argument that the officer's testimony explaining the role of a Child Advocacy Center and describing how many child sexual abuse investigations she had led is expert testimony because it is based on her training and experience. Like the officer's testimony about "processing" traumatic events, this testimony does not contain "highly technical or specialized . . . information," id., but rather provides general background information that the average lay person is able to understand, see id. at 421-24; DePaula, 170 N.H. at 152-55.

Nor are we persuaded by the defendant's second argument that the officer's testimony about "processing" was expert testimony because it was offered to explain why the victim may have delayed reporting the sexual assaults and offered inconsistent accounts of the assaults. The defendant relies on State v. Gonzalez, 150 N.H. at 78-79, in support of this argument. However, the defendant's reliance on Gonzalez is misplaced.

In Gonzalez, the defendant was charged with sexual assault. Id. at 75. At trial, as part of its case-in-chief, the State called a social worker and a detective as lay witnesses. Id. The State elicited testimony from both witnesses regarding their training and experience interviewing victims of sexual abuse. Id. at 75, 78. Based on that training and experience, the social worker testified that it is not unusual for victims to deny that they have been abused or to recant allegations, and the detective testified that victims do not typically report assaults at the time they occur. Id. The defendant objected to the testimony of both witnesses at trial, arguing that the testimony was improper expert testimony, but the trial court admitted the testimony. See id. at 75-76. The defendant made the same argument on appeal, and we agreed, concluding that the testimony of both witnesses was expert testimony but that the court's error in admitting it was harmless. Id. at 77-80.

We emphasized that the State had offered the testimony to explain the behavior of victims regarding disclosure, observing that this was expert testimony because it educated the jury as to how victims frequently delay reporting abuse, provide inconsistent accounts of abuse, and recant allegations. Id. at 78-79. We noted that, because delayed disclosure or inconsistent accounts by a victim may be puzzling or appear counterintuitive to lay observers, "expert testimony may be permitted to educate the jury about apparent inconsistent behavior by a victim following an assault and to 'provide useful information that is beyond the common experience of an average juror.'" Id. at 78 (quoting State v. MacRae, 141 N.H. 106, 109 (1996)) (brackets

9

omitted).  The purpose of the testimony was to explain the potentially counterintuitive behavior that sexual assault victims may sometimes display, so that the jury could better assess the victim's credibility.  See id. at 75.

Here, unlike in Gonzalez, the officer's testimony was not offered by the State during direct examination to educate the jury about how victims generally address the issue of disclosure.  Rather, the testimony was precipitated by defense counsel's cross-examination of the officer: defense counsel attempted to discredit the police department's investigation in this case by asking the officer several questions about standard investigation procedures, and then trying to establish that the department had not followed those procedures.  As part of that strategy, defense counsel asked the officer, "And another basic proper procedure is to try to do interviews in close as time as possible to an event, right?"  The officer disagreed, explaining that the timing of interviews varies by case, and that "sometimes it is beneficial, actually, to wait for a person to process that information before we speak with them."  On redirect, the State simply provided the officer an opportunity to further explain that answer, and she gave the response at issue.  Thus, although the officer's passing reference on redirect to disclosure being a "process" for victims arguably touches upon the issue of delayed disclosure, the statement was offered to explain the police department's investigation procedures, rather than the behavior of victims.  The officer's brief allusion to disclosure being a "process" for victims is very different from the testimony in Gonzalez, in terms of the purpose for which it was offered, the context in which it was elicited, and the degree to which it addresses the issue of disclosure by victims.  Cf. id.

In sum, we conclude that the trial court sustainably exercised its discretion when it ruled that the defendant was not entitled to enter portions of the interview transcript into the record and when it admitted the officer's testimony as permissible lay testimony.  All issues raised in the defendant's notice of appeal, but not briefed, are deemed waived.  See State v. Stanin, 170 N.H. 644, 652 (2018).

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.