# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2019-0303, <u>State of New Hampshire v. Walton Valentin</u>, the court on April 9, 2020, issued the following order:

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Walton Valentin, appeals an order by the Superior Court (<u>Delker</u>, J.) denying his motion for a new trial based upon ineffective assistance of counsel. He contends that the trial court erred by finding that he did not show that his trial counsel's failure to obtain certain evidence actually prejudiced his case. We confine our analysis to the defendant's federal constitutional claim because he has failed to cite a specific provision of the State Constitution on appeal. <u>See</u> <u>State v. Boggs</u>, 171 N.H. 115, 120 (2018); <u>see</u> <u>also</u> <u>State v. Wilbur</u>, 171 N.H. 445, 448 (2018) (stating that standard for determining whether defendant received effective assistance of counsel is same under both State and Federal Constitutions).

For the defendant to prevail on an ineffective assistance of counsel claim, he must show that his counsel's representation was constitutionally deficient and that such deficient performance prejudiced the outcome of his case. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Failure to establish either element requires a finding that counsel's performance was not constitutionally defective. <u>State v. Marden</u>, 172 N.H. 258, 262 (2019).

Both elements of an ineffectiveness inquiry are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698. Therefore, we will not disturb the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review <u>de</u> <u>novo</u> the ultimate determination of whether each element is established. <u>Marden</u>, 172 N.H. at 263. Because we conclude in this case that trial counsel's alleged deficient performance did not prejudice the outcome of the defendant's case, we need not address whether trial counsel's performance was deficient. <u>See</u> <u>id</u>. at 262.

To establish that trial counsel's alleged error prejudiced the outcome of the defendant's case, the defendant must demonstrate actual prejudice by showing that there is a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided. <u>Id</u>. at 263. A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Id</u>. The prejudice analysis considers the totality of

the evidence presented at trial.  Id.  Notably, here, because the judge who ruled on the motion for a new trial also presided at the jury trial in which the defendant was convicted, the trial court was in a better position than we are to assess whether defense counsel's performance prejudiced the defendant.  Id.

In this case, the defendant was tried in Massachusetts on criminal charges arising from his conduct toward the victim in the Commonwealth.  He was subsequently tried in New Hampshire on multiple criminal charges arising from his conduct toward the victim in New Hampshire.  The defendant contends that his New Hampshire trial counsel was ineffective because he failed to obtain two transcripts from the previous Massachusetts proceedings: (1) one in which the Massachusetts court examined the victim, outside the presence of the prosecutor and the defendant, to determine whether she had a legitimate ground on which to assert her Fifth Amendment privilege and decline to testify in the defendant's Massachusetts criminal trial; and (2) one in which a friend of the victim testified at the defendant's Massachusetts criminal trial.  We assume, without deciding, that these transcripts were available and admissible, and that the defendant's arguments are preserved.

We first address whether trial counsel's failure to obtain the transcript of the victim's colloquy with the Massachusetts judge regarding the basis for her assertion of her 5th Amendment right created a reasonable probability that the outcome of the defendant's New Hampshire trial would have been different but for the lack of this transcript.  The defendant's central contention is that the victim's New Hampshire testimony, during which she frequently stated that she could not remember events,  "supported the State's theory that [her] testimony was the product of memory issues related to domestic violence," rather than the defendant's theory that she was trying to avoid "criminal liability for lying to the police."  He argues that the Massachusetts transcript was essential to establishing his theory.  However, the victim's statements to the Massachusetts judge were comparable to her testimony in the New Hampshire trial.

 The victim told the Massachusetts judge that she lied to the police when she stated that the defendant kidnapped her.  Specifically, she stated, "I lied, I lied," and "[h]e didn't kidnap me.  He didn't."  She further agreed that she was afraid that if she admitted lying to the police, she could be charged criminally.  Massachusetts declined to provide her with immunity.

Similarly, during the defendant's New Hampshire trial, primarily in response to cross-examination, the victim testified that:  (1) she lied to the police about why she went to the motel with the defendant; (2) she went to the hotel room with the defendant willingly; (3) the threats she had previously told police that the defendant used to force her to go to the hotel "didn't happen"; (4) she lied when she told the police that the defendant jumped into her vehicle; (5) contrary to her previous statements, the defendant did not point a gun at her and pull the trigger; (6) she told the police that the defendant did things

2

that he did not actually do; (7) when speaking with police after the event, "[she] was very nervous and [she] would say anything"; and (8) she decided to lie to the police and then did lie to the police.

The victim further testified that: (1) when she wrote her statement for the police, she was afraid that she would be arrested for falsely accusing the defendant of kidnapping her; and (2) she had been given immunity because she initially lied to police, and she would not have testified without it.

The defendant contends that the victim did not claim lack of memory during the colloquy with the Massachusetts judge. The transcript reflects that she never had an opportunity to do so. The judge asked her a few general questions solely to establish the legitimacy of her refusal to testify pursuant to the 5th Amendment; what details she did or did not recall about events were beyond the scope of the colloquy.

The defendant's comparison to Wilbur is inapposite. In that case, defense counsel was ineffective when she failed to use the transcript of the defendant's interview with police to counter the State's mischaracterization of the defendant's statements during the interview. Wilbur, 171 N.H. at 452. In the case at hand, the transcript that the defendant faults trial counsel for not obtaining was substantially similar to the victim's testimony at trial. Although, in its closing, the State encouraged the jury to consider the victim's testimony in light of the State's theory of the case, the defendant does not contend that it mischaracterized her testimony. Cf. State v. Brown, 143 N.H. 197, 199 (1998) (stating defendant entitled to transcript of prior hearings when counsel clearly demonstrated value of transcripts as tools for effective defense); State v. Cofske, 129 N.H. 133, 135 (1987) (right to transcript of prior proceeding is not absolute, but depends, in part, upon value of transcript to defendant).

The defendant argues that having the Massachusetts transcript: (1) "would have effectively countered the expert testimony on domestic violence" because in that transcript the victim admitted that she had lied to police; (2) might have "produced a more persuasive defense opening statement using the [victim's] precise words"; (3) "would have changed the narrative of the closing arguments" by rebutting the State's argument that the victim "never said I made the whole thing up"; (4) might have "broken down" the witness, causing her to make other admissions and the jury to disbelieve other parts of her testimony; and (5) "would have seriously undermined the State's argument that [the victim] had memory issues . . . [and] was minimizing the details of the assault." However, the limited purpose of the Massachusetts colloquy and the similarities between the victim's statements at that time and her testimony in the New Hampshire trial belie these speculative assertions. See State v. Cossette, 151 N.H. 355, 362 (2004) (stating that lack of additional evidence admissible only to further impeach victim did not prejudice outcome).

The defendant faults the trial court's analysis of whether his counsel was ineffective for not considering his trial to have been a "close case." He bases this characterization on the following facts: (1) the jury deliberated for approximately five hours on the Friday when they were given the case; (2) that afternoon, in response to a note from the jury, the judge gave "a sort of standard dynamite instruction" encouraging the jury to reach a verdict and released them for the weekend to allow them "to essentially sleep on it"; and (3) on Monday, the jury reached a verdict in approximately 90 minutes. However, these facts equally support the conclusion that the jury was tired and struggling with the multiple charges and limiting instructions, rather than that it was divided on the outcome.

On this record, we conclude that the trial court did not err in deciding that the defendant did not carry his burden to show that his counsel was constitutionally ineffective because he failed to establish that the lack of the transcript of the victim's Massachusetts 5th Amendment colloquy prejudiced the outcome of his New Hampshire trial. See Strickland, 466 U.S. at 687, 688.

We next address whether trial counsel's failure to obtain the transcript of the victim's friend's testimony in the Massachusetts criminal trial created a reasonably probability that the outcome of the New Hampshire trial would have been different but for the lack of this transcript. During the New Hampshire trial, the victim testified that, after the defendant assaulted her, she had telephoned a friend in Florida, who advised her to lie to the police. Previously, the victim had told police that, during the assault, she had phoned her brother. During the Massachusetts trial, another friend of the victim who lived in Massachusetts testified that, after the assault, the victim called her and that she took the victim home with her from the hospital.

The defendant contends that the Massachusetts friend's testimony conflicted with the victim's New Hampshire testimony. However, in the New Hampshire trial, the victim was not asked how many people she had called during and after the assault, nor did the victim deny calling multiple people after the assault. Accordingly, the Massachusetts friend's testimony that the victim called her is not inconsistent with the victim's testimony that she called the Florida friend.

4

On this record, we conclude that the trial court did not err in deciding that the defendant did not carry his burden to show that his counsel was constitutionally ineffective because he failed to establish that the lack of the transcript of the victim's friend's Massachusetts testimony prejudiced the outcome of his New Hampshire trial.  See <u>Strickland</u>, 466 U.S. at 687, 688.

<u>Affirmed</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**